[No. 17233.   Department One.   September 11, 1922.]

MARYLAND REALTY COMPANY, *Respondent*, v. THE CITY
OF TACOMA *et al., Appellants.*[1]

TAXATION (106, 147, 177, 178) — LIEN — FORECLOSURE — TITLE OF
PURCHASER—PRIORITY OVER LOCAL ASSESSMENTS.   The purchaser of
county lands acquired at a general tax foreclosure, takes title free
and clear of all local assessments; and Rem. Comp. Stat., § 9393, re-
quiring the holder of certificates of delinquency for general taxes to
pay all local assessments, before foreclosing the tax lien, does not
apply to county foreclosures; in view of the provision in § 9393 re-
quiring proceeds of sales of land struck off to the county on tax
sales to be first applied to discharge the general tax lien, the re-
mainder to be applied to the payment of local assessment liens; and
Id., § 11308, providing that such lands, on being struck off to the
county, shall be exempt from taxation while owned by the county;
and Id., § 11309, providing that claims shall not be allowed against
the county for taxes levied thereon by taxing districts; and Id.,
§ 9372, providing that local assessments shall be prior to all other
liens except a lien for general taxes.

SAME.   The announcement at a sale of county tax lands that the
same will be subject to local assessments does not change the above
rule or prevent the purchaser from acquiring title free and clear
thereof.

SAME (150, 153)—FORECLOSURE OF LIEN—PARTIES—PROCESS—PUB-
LICATION OF SUMMONS.   County proceedings to foreclose certifi-
cates of delinquency for general taxes by publication of summons
under Rem. Com. Stat.. § 11295, are in rem, and culminate in a good
title without personal service upon parties interested in the land.

Appeal from a judgment of the superior court for
Pierce county, Chapman, J., entered March 23, 1922,
in favor of the plaintiff, in an action to quiet title, tried
to the court.   Affirmed.

*M. S. Lindsay* and *E. F. Adams,* for appellants.

*George O. Swasey,* for respondent.

BRIDGES, J.—The chief question involved in this ap-
peal is: Does the purchaser from a county of real
estate obtained by it under foreclosure of a general tax

[1]Reported in 209 Pac. 1.

certificate of delinquency receive a title free and clear of all previous local improvement assessments.

The facts are stipulated and are as follows: By virtue of Rem. Comp. Stat., § 9389, the city of Tacoma issued to the defendants Lindsay and Scharpf a certificate of delinquency covering certain real estate, which certificate grew out of a certain local improvement assessment. Subsequently the county treasurer of Pierce county issued to the county certificates of delinquency based upon general county and state taxes, which certificates were thereafter foreclosed by it, and at the sale it bid in the property covered by the certificates previously issued to and held by the defendants. Laws of 1917, p. 417; Rem. Comp. Stat., § 11295. Later, at public auction, the county sold such property to the plaintiff and made a deed thereto. In the foreclosure proceeding the county caused a general summons or notice to be published as required by the statute, and the sufficiency of such notice is not here questioned. It also caused a copy of the complaint to be served on the treasurer of the city of Tacoma. In such foreclosure proceedings, nothing was said concerning the local improvement assessments or the issuance of the certificates of delinquency thereon to the defendants, nor were the defendants Lindsay and Scharpf in any manner served with any process in that action. However, at the foreclosure sale it was orally announced "that all bids made would be subject to the lien of all assessments for local improvements." After the plaintiff obtained its title from the county, it brought this suit to quiet its title against the local improvement assessment lien and against any rights of the defendants growing out of such assessments. A judgment was entered for the plaintiff as prayed for, and the defendants have appealed.

Appellants contend that the legislature, by its various enactments, intended to make the lien for local assessments and that for general taxes equal, and that the foreclosure of the lien of the latter cannot, at least under the circumstances shown here, destroy and cut off the lien of the former. The whole case depends upon the construction of our statutes. Section 11267, Rem. Comp. Stat., provides that the lien of general taxes:

". . . shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility to or with which said real estate may become charged or liable."

Section 9257, Rem. Code (P. C. § 6995), as amended by the Laws of 1917, p. 417, is with reference to general taxes and is in part as follows:

"After the expiration of five years from the date of delinquency, when any property remains on the tax-rolls for which no certificate of delinquency has been issued, the county treasurer shall proceed to issue certificates of delinquency on said property to the county, and shall file said certificates when completed with the clerk of the court, and the treasurer shall thereupon, . . . proceed to foreclose in the name of the county, the tax liens embraced in such certificates, and the same proceedings shall be had as when held by an individual: *Provided,* That summons may be served or notice given exclusively by publication in one general notice, describing the property as the same is described on the tax-rolls. Said certificates of delinquency issued to the county may be issued in one general certificate in book form including all property, and the proceedings to foreclose the liens against said property may be brought in one action and all persons interested in any of the property involved in said proceedings may be made co-defendants in said action, and if unknown may be therein named as unknown owners, and the publication of such notice shall be

sufficient service thereof on all persons interested in the property described therein. . . . and all persons owning or claiming to own, or having or claiming to have an interest therein, are hereby required to take notice of such proceedings and of any and all steps thereunder. . . . " Rem. Comp. Stat., § 11295.

Section 9393, Rem. Comp. Stat., found in the chapter with reference to local improvements, reads as follows:

"The holder of any certificate of delinquency for general taxes shall, before commencing any action to foreclose the lien of such certificate pay in full all local assessments or installments thereof outstanding against the whole or any portion of the property included in such certificate of delinquency, or, he may elect to proceed to acquire title to such property subject to certain or all local assessments a lien thereon, in which case the complaint, decree of foreclosure, order of sale, sale, certificate of sale and deed shall so state. . . . In any action to foreclose any lien for general taxes upon any property a copy of the complaint shall be served on the treasurer of the city or town within which such property is situate within five days after such complaint is filed. In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied to discharge in full of the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the city to discharge all local assessment liens upon such property, and the surplus, if any, shall be distributed among the proper county funds."

Appellants contend that this last quoted section applies to foreclosures and purchases made by counties as well as those made by private individuals, and that consequently it was necessary that the county before foreclosing should pay the local assessments or bid in the property subject thereto. We cannot so hold.

Before the passage of § 9393 by the 1911 legislature we had consistently held that the payment of local assessments was not a prerequisite to foreclosure of certificates of delinquency for general taxes, whether such suit be by a county or by private individuals. *McMillan v. Tacoma*, 26 Wash. 358, 67 Pac. 68; *Ballard v. Way*, 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993; *Pennsylvania Co. v. Tacoma*, 36 Wash. 656, 79 Pac. 306; *Ballard v. Ross*, 38 Wash. 209, 80 Pac. 439. It was after the rendition of these decisions that the legislature passed § 9393. It was the legislative intent to preserve the lien of the local assessment where it could be done without sacrifice to the county and state. If private investors would take the property, they must pay both the delinquent general tax and the local assessments, but if the property be of such small value as that the county must buy it in, then the superiority of the lien for general taxes must be asserted, even to the point of destroying the lien of the local assessment. Any other construction of the statute would greatly hamper and hinder the state and county in securing funds by means of which they are enabled to carry out their constitutional and statutory functions.

In a general way, the first portion of § 9393, Rem. Comp. Stat., is possibly broad enough to include the county as well as private individuals, but the latter portion of the section makes it plain that the legislature did not intend to include counties, for otherwise it would have been useless to have made the provision that " . . . . where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied to discharge in full the lien or liens for gen-

eral taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the city to discharge all local assessment liens upon such property, and the surplus, if any, shall be distributed among the proper county funds.''

While the exact question we are now discussing has not previously been before this court, yet in the case of *Holzman v. Spokane,* 91 Wash. 418, 157 Pac. 1086, we seem to have assumed that such section applied only to private individuals, for we there said:

"The local improvement law of 1911 containing the above quoted provisions in § 40 thereof [§ 9393, Rem. Comp. Stat.] looking to the enforcement of local assessment liens and in effect making them of equal rank with general tax liens when the latter has been transferred by the county to private individuals, . . .''

And in the case of *Lawrence v. Tacoma,* 103 Wash. 86, 173 Pac. 1017, speaking generally of this same section, we seemed to have assumed that it applied only to private individuals, for we said:

"It is plain from the wording of the statute that, before a foreclosure of a certificate of delinquent taxes may be had by a private owner thereof, it is necessary to pay local improvement assessments, and *vice versa.*"

Where the county forecloses a certificate of delinquency on account of general taxes and buys in at the sale and later sells the property to a private individual, it initiates and creates a new title to the property, which the private individual takes free and clear of any kind or character of prior liens. Section 11308, Rem. Comp. Stat., reads:

"All property deeded to the county under the provisions of this act shall be stricken from the tax-rolls as county property and exempt from taxation and

shall not be again assessed or taxed while the property of the county.''

Section 11309, Rem. Comp. Stat., reads that:

''No claims shall ever be allowed against the county from any municipality, school district, road district or other taxing district for taxes levied on property acquired by the county by tax deed under the provisions of this act, but all taxes shall at the time of deeding said property be thereby cancelled: . . .''

Section 9372, Rem. Comp. Stat., being a part of the local improvement act, provides that the lien of the local assessment shall be prior to all other liens ''except a lien for assessment for general taxes.'' Because the state and its subdivisions and municipalities depend for their existence entirely upon the power of taxation and the collection of revenues thereby, this court will not make any ruling which would hinder and delay the collection of such taxes, unless clearly so provided by the legislature. We said in *McMillan v. Tacoma, supra*:

''The state and its subordinate municipalities cannot exist without the collection of public revenue, and serious confusion would result if the lien of taxes levied for that purpose should be made inferior to, or equal with, local assessments or other liens.''

The announcement at the beginning of the sale that ''all bids made would be subject to the lien of all assessments for local improvements'' cannot alter the situation. We are not called upon to decide what would have been the result if, under this announcement, the property had been sold to private persons. There were no bids, and because there were none the property was considered as sold to the county. The announcement did not cover such a situation. Even if it had, the county would not have been bound by it, because those in charge of the sale did not have any

power or authority to make such an announcement, in so far as it might affect property bought in by the county.

The appellants contend that their rights have not been cut off because they were not made parties to, or served with process in, the county foreclosure suit. We have always held that such proceedings were *in rem* and that personal service was not necessary. Section 9257, Rem. Code (P. C. § 6995), as amended by the Laws of 1917, p. 417, expressly provides for publication of service, and that such ". . . shall be sufficient service thereof on all persons interested in the property described therein . . . and all persons . . . are hereby required to take notice of such proceedings and of any and all steps thereunder." Rem. Comp. Stat., § 11295.

The judgment is affirmed.

PARKER, C. J., TOLMAN, FULLERTON, and MITCHELL, JJ., concur.