[No. 20925. Department One. March 5, 1928.]

CITY OF TACOMA, *Respondent,* v. FLETCHER REALTY
COMPANY *et al., Defendants,* ST. ANTHONY
FALLS BANK *et al., Appellants.*[1]

[1] TAXATION (106)—LIEN—FORECLOSURE—PRIORITY OVER LOCAL AS-
SESSMENTS. A private investor, purchasing land at a county
tax foreclosure sale, takes the title free from the lien of local
municipal assessments, and it is immaterial that the officer
making the sale made the unauthorized announcement that the
sale was subject to such assessments; in view of Rem. 1927
Sup., § 11097-99, making the lien of general taxes superior to
all other liens, and the provision of the law providing for a
sale of no more land than sufficient to pay the general tax
(TOLMAN, and PARKER, JJ., dissenting.)

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered July 9, 1927, upon find-
ings in favor of the plaintiff, in an action to foreclose
the lien of local improvement assessments, tried to the
court. Reversed.

*Carroll Hendron,* for appellants.

*E. K. Murray, Leo Teats* and *Bartlett Rummel,* for
respondent.

FRENCH, J.—There is but one question in this case,
i. e., does a purchaser at a county tax foreclosure sale,
where the city has been regularly served, take title
subject to local improvement assessments?

[1]  We have held:

"By the provisions of Rem. & Bal. Code § 9230,
(P. C. 501, § 205), the lien of general taxes is
declared to be superior to all other liens and claims
upon the property against which such taxes are
charged. The regular foreclosure of such a lien as

[1]Reported in 264 Pac. 997.

was concededly had against this lot has, under our
revenue law, all the force of a proceeding *in rem, Continental Distributing Co. v. Smith,* 74 Wash. 10, 132
Pac. 631, and vests in a purchaser at a sale held under
such foreclosure a new title independent of all previous titles or claims of title to the property. *Hanson v.
Carr,* 66 Wash. 81, 118 Pac. 927. Manifestly, both
record and possessory title are equally absolutely destroyed by such a foreclosure. Such is the theory upon
which the following decisions of this court were rendered, though they involved only the question of superiority of general tax liens over local assessment
liens. *McMillan v. Tacoma,* 26 Wash. 358, 67 Pac. 68;
*Keene v. Seattle,* 31 Wash. 202, 71 Pac. 769; *Ballard v.
Way,* 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993;
*Pennsylvania Co. v. Tacoma,* 36 Wash. 656, 79 Pac.
306; Black, Tax Titles, (2nd ed.) § 420." *Gustaveson v. Dwyer,* 78 Wash. 336, 139 Pac. 194.

Also, in *McMillan v. Tacoma,* 26 Wash. 358, 67 Pac.
68, we said:

"Sec. 93, p. 316, Laws 1891, contains the following:

" 'The said lien shall have priority to and shall be
fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation, or responsibility to
or with which said real estate may become charged or
liable.'

"Stronger language could not be used to declare the
general tax lien paramount over every other possible
lien or burden to which property may be subjected.
The identical language above employed has been carried forward into subsequent statutes, and is found in
the following Session Laws: Laws 1893, p. 358, § 79;
Laws 1895, p. 516, § 19; Laws 1897, p. 174, § 78. There
has been no repeal or modification of the statute as it
was left in 1897, and the same is now the law. Under
that declaration of the legislature it must be held that
the holder of a delinquent general tax certificate is not
required to pay local street assessment liens before he
can proceed to foreclose and sell under his general tax
lien. He is entitled to a decree establishing his tax
lien as paramount and superior to all other liens or
charges against the property."

This same section is still in our revenue laws, Laws of 1925, Ex. Sess., p. 291, § 99; Rem. 1927 Sup., § 11097-99.

Rem. Comp. Stat., § 9393, provides:

"The holder of any certificate of delinquency for general taxes shall, before commencing any action to foreclose the lien of such certificate pay in full all local assessments or installments thereof outstanding against the whole or any portion of the property included in such certificate of delinquency, or, he may elect to proceed and acquire title to such property subject to certain or all local assessments a lien thereon, in which case the complaint, decree of foreclosure, order of sale, sale, certificate of sale and deed shall so state. If such holder shall pay such local assessments, he shall be entitled to fifteen per cent interest per annum on the amount of the delinquent assessments or delinquent installments thereof so paid, from date of payment.

"In any action to foreclose any lien for general taxes upon any property a copy of the complaint shall be served on the treasurer of the city or town within which such property is situate within five days after such complaint is filed. In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied to discharge in full the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the city to discharge all local assessment liens upon such property and the surplus, if any, shall be distributed among the proper county funds."

In construing this statute this court, in *Maryland Realty Co. v. Tacoma,* 121 Wash. 230, 209 Pac. 1, said:

"Appellants contend that this last quoted section applies to foreclosures and purchases made by counties

as well as those made by private individuals, and that consequently it was necessary that the county before foreclosing should pay the local assessments or bid in the property subject thereto. We cannot so hold. Before the passage of § 9393 by the 1911 legislature, we had consistently held that the payment of local assessments was not a prerequisite to foreclosure of certificates of delinquency for general taxes, whether such suit be by a county or by private individuals. *McMillan v. Tacoma,* 26 Wash. 358, 67 Pac. 68; *Ballard v. Way,* 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993; *Pennsylvania Co. v. Tacoma,* 36 Wash. 656, 79 Pac. 306; *Ballard v. Ross,* 38 Wash. 209, 80 Pac. 439. It was after the rendition of these decisions that the legislature passed § 9393. It was the legislative intent to preserve the lien of the local assessment where it could be done without sacrifice to the county and state. If private investors would take the property, they must pay both the delinquent general tax and the local assessments, but if the property be of such small value as that the county must buy it in, then the superiority of the lien for general taxes must be asserted, even to the point of destroying the lien of the local assessment. Any other construction of the statute would greatly hamper and hinder the state and county in securing funds by means of which they are enabled to carry out their constitutional and statutory functions.''

The record in this case shows that, at the commencement of the county tax sale at which the lands in this controversy were sold by the county, an announcement was made that ''all bids are subject to local improvements.'' The record also shows that, at the time this announcement was made, appellants, the purchasers, were not present and had no knowledge thereof, and that there was nothing in the record or notice of sale to suggest that the land was being sold subject to local assessments. But this announcement can, in no event, alter the situation. The duty of the officials is to sell the land and collect the taxes.

The legislature prescribes that private holders of certificates of delinquency must foreclose subject to the lien of the local assessments. But in all the rights and privileges granted to municipalities for the purpose of enabling them to collect their liens, the state has uniformly insisted that the taxes due the county constitute a prior lien. A county, in collecting the tax, is but an arm or agency of the state, and it is the right and duty of the state, acting through its law-making body, to fix the priorities of the various kinds of taxes and to prescribe the manner and method of collection.

In the final analysis, there is but one way to enforce the collection of taxes, and that is by the sale of property, and this cannot and must not be made impossible by the unauthorized statements of those in charge of the sale. The duties of those conducting a sale are prescribed by statute; every step of the proceeding is plainly designated both by statute and decision, and purchasers are not required to anticipate that there may be a radical departure therefrom when the written record is silent. We have held:

"Where the county forecloses a certificate of delinquency on account of general taxes and buys in at the sale and later sells the property to a private individual, it initiates and creates a new title to the property, which the private individual takes free and clear of any kind or character of prior liens. Section 11308, Rem. Comp. Stat., reads:

"'All property deeded to the county under the provisions of this act shall be stricken from the tax-rolls as county property and exempt from taxation and shall not be again assessed or taxed while the property of the county.'

"Section 11309, Rem. Comp. Stat., reads that:

"'No claims shall ever be allowed against the county from any municipality, school district, road district or other taxing district for taxes levied on property ac-

quired by the county by tax deed under the provisions of this act, but all taxes shall at the time of deeding said property be thereby cancelled. . . .'

"Section 9372, Rem. Comp. Stat., being a part of the local improvement act, provides that the lien of the local assessment shall be prior to all other liens 'except a lien for assessment of general taxes.' Because the state and its subdivisions and municipalities depend for their existence entirely upon the power of taxation and the collection of revenue thereby, this court will not make any ruling which would hinder and delay the collection of such taxes, unless clearly so provided by the legislature. We said in *McMillan v. Tacoma, supra*:

" 'The state and its subordinate municipalities cannot exist without the collection of public revenue, and serious confusion would result if the lien of taxes levied for that purpose should be made inferior to, or equal with, local assessments or other liens.' " *Maryland Realty Co. v. Tacoma*, 121 Wash. 230, 209 Pac. 1.

When is this new title initiated and created? It can only be when the tax foreclosure and sale take place, for it is at that time all parties are before the court; then that all defenses are examined, all questions litigated, and then, if the proceedings are regular, is the new title created.

What is it that is being sold at the county tax sale? It is the land, not the lien, and the smallest portion of the land that will realize the amount of the taxes. Presumably, if the land is worth more than the amount of the taxes, a lesser amount than the whole thereof will be sold, leaving a balance, of course, subject to the lien of the local assessments. But the superior governmental agency—the state—cannot be unduly hampered in the collection of its revenues, and unless it plainly appears from the legislative enactment that it was the intention of the state to sell the land subject to the lien of the local assessments, the court should not so hold.

In *Maryland Realty Co. v. Tacoma, supra,* we held that, where the county sold land which it had bid in at county sale, it sold it free from the lien of local assessments. We now hold that, where a private individual buys land at a county sale for taxes, all proceedings being regular, and the municipality having been made a party, that this land is purchased free from the lien of local assessments.

The judgment of the lower court is reversed, with instructions to dismiss the action.

MACKINTOSH, C. J., and MITCHELL, JJ., concur.

TOLMAN, J. (dissenting)—The fundamental weakness or vice, if I may be permitted to use that expression, of the opinion of the majority lies, I believe, in the assumption that the new tax title is initiated by the general tax sale and that it then becomes paramount and supreme. If I correctly read our statutes, this cannot be. By Rem. Comp. Stat., § 9393, and by the amendment thereto, Laws of 1925, Ex. Sess., p. 291; Rem. 1927 Sup., § 9393, it is plainly and clearly provided that, when the county becomes a purchaser at such sale, it must hold the property for the benefit of the county, and for the city, if there be special assessment liens thereon; that the city may redeem in the manner provided in the 1925 act, and if there be no such redemption, the county, upon making a resale, shall, after satisfying its own claims from the proceeds of such sale, pay the overplus, or so much thereof as be necessary, to the city "to discharge all local assessment liens upon such property."

These provisions of the statute clearly establish two things: First, that the local assessment liens are not foreclosed in the foreclosure proceedings and are not discharged by the general tax sale; and, second, that the county, by buying at the general tax sale, becomes a trustee for the purposes indicated.

Of course, if the county, having exercised the diligence and good faith always required of a trustee, can realize by resale an amount less than, or only enough to pay, the general tax liens, then a new title is initiated in the purchaser at the resale, freed from all prior liens of both the general taxes and special assessments; but not until such resale is so consummated is the lien of the special assessments divested. Search our statutes from end to end and there will be found no provision for the foreclosure or discharge of the lien of local assessments, save only by their payment in full, or by the county alone on resale in the manner just indicated. We have no power to legislate upon the subject; and had we the power, it would be unjust to exercise it for the purpose of destroying the special assessment lien.

With this premise clearly established, can it be held that a purchaser at a general tax sale can defeat the beneficent purpose of the statute, and by bidding and paying the amount of the general taxes only thereby absolutely cut off the liens of the local assessments? As was said in *Maryland Realty Co. v. Tacoma,* 121 Wash. 230, 209 Pac. 1:

"It was the legislative intent to preserve the lien of the local assessment where it could be done without sacrifice to the county and state. If private investors would take the property, they must pay both the delinquent general tax and the local assessments, but if the property be of such small value as that the county must buy it in, then the superiority of the lien for general taxes must be asserted, even to the point of destroying the lien of the local assessment. : . .

"Where the county forecloses a certificate of delinquency on account of general taxes and buys in at the sale and later sells the property to a private individual, it initiates and creates a new title to the property, which the private individual takes free and clear of any kind or character of prior liens."

Since the individual purchaser is not accorded the privilege of making a resale and applying the proceeds as the county may do, there remains to him only one means of discharging the lien of local assessments, and that is by payment in full.

Under the statute as construed in *Maryland Realty Co. v. Tacoma, supra, Everett v. Morgan,* 133 Wash. 225, 233 Pac. 317, and *State ex rel. Spokane v. DeGraff,* 143 Wash. 326, 255 Pac. 371, the judgment appealed from is right and should be affirmed.

PARKER, J., concurs with TOLMAN, J.