[No. 20925.  *En Banc.*  November 27, 1928.]

THE CITY OF TACOMA, *Respondent,* v. FLETCHER REALTY
COMPANY *et al., Defendants,* ST. ANTHONY FALLS
BANK *et al., Appellants.*[1]

*Carroll Hendron,* for appellants.

*E. K. Murray, Leo Teats,* and *Bartlett Rummell,* for
respondent.

*Preston, Thorgrimson & Turner, Thomas J. L. Ken-
nedy, Arthur Schramm, J. M. Geraghty, Alex M. Win-*

[1]Reported in 272 Pac. 43.

ston, H. E. Donohoe, Arthur McGuire, O. Duncan
Anderson, Ben Driftmier, W. C. Bates, James P. H.
Callahan, Dolph Barnett, J. H. Secrest, Charles B.
Sampley, E. E. Boner, J. E. Stone, O. M. Nelson,
C. L. Holcomb, Herman Murray, John Lynch, Thomas
Stevenson, Lewis & Church, J. H. Jahnke, and R. V.
Welts, amici curiae.

TOLMAN, J.—This cause was heretofore heard by a
Department of this court and its opinion will be found
in 146 Wash. 671, 264 Pac. 997. After the filing of the
Departmental opinion, a petition for a rehearing was
filed and granted, and the cause was again argued be-
fore the court sitting En Banc.

A majority of the court has now reached the conclu-
sion that the Departmental opinion cannot be sus-
tained, and that the judgment of the trial court must
be affirmed.

The facts are not now in issue and need not
be restated. The sole question is whether or not a
purchaser at a general county tax foreclosure sale
takes title freed from the liens of local assessments,
the city under whose authority such local assessment
liens were created having been made a party to the
foreclosure proceeding.

We cheerfully accept, without reservation, that part
of the Departmental opinion which holds, in accord
with our prior decisions and the statute, that general
taxes are superior and paramount to all other liens
and claims, including the lien of local assessments, but
that only brings us to the threshold of the present
question.

The legislature, in the light of the early decisions of
this court, which are cited in the Departmental opinion,
and to cure the situation which was pointed out by
those decisions, enacted what is now Rem. Comp. Stat.,
§ 9393, as we see it, for the purpose, and the sole pur-

pose, of preventing and avoiding the extinguishment of the liens of local assessments until the very last moment. That section reads:

"The holder of any certificate of delinquency for general taxes shall, before commencing any action to foreclose the lien of such certificate pay in full all local assessments or installments thereof outstanding against the whole or any portion of the property included in such certificate of delinquency, or, he may elect to proceed to acquire title to such property subject to certain or all local assessments a lien thereon, in which case the complaint, decree of foreclosure, order of sale, sale, certificate of sale and deed shall so state. If such holder shall pay such local assessments, he shall be entitled to fifteen per cent interest per annum on the amount of the delinquent assessments or delinquent installments thereof so paid, from date of payment.

"In any action to foreclose any lien for general taxes upon any property a copy of the complaint shall be served on the treasurer of the city or town within which such property is situate within five days after such complaint is filed. In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied to discharge in full the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the city to discharge all local assessment liens upon such property, and the surplus, if any, shall be distributed among the proper county funds."

This statute was considered by this court in *Maryland Realty Co. v. Tacoma*, 121 Wash. 230, 209 Pac. 1, where it was said:

"Appellants contend that this last quoted section applies to foreclosures and purchases made by counties as well as those made by private individuals, and that consequently it was necessary that the county before foreclosing should pay the local assessments or

bid in the property subject thereto. We cannot so hold. Before the passage of § 9393 by the 1911 legislature we had consistently held that the payment of local assessments was not a prerequisite to foreclosure of certificates of delinquency for general taxes, whether such suit be by a county or by private individuals. *McMillan v. Tacoma,* 26 Wash. 358, 67 Pac. 68; *Ballard v. Way,* 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993; *Pennsylvania Co. v. Tacoma,* 36 Wash. 656, 79 Pac. 306; *Ballard v. Ross,* 38 Wash. 209, 80 Pac. 439. It was after the rendition of these decisions that the legislature passed § 9393. It was the legislative intent to preserve the lien of the local assessment where it could be done without sacrifice to the county and state. If private investors would take the property, they must pay both the delinquent general tax and the local assessments, but if the property be of such small value as that the county must buy it in, then the superiority of the lien for general taxes must be asserted, even to the point of destroying the lien of the local assessment. Any other construction of the statute would greatly hamper and hinder the state and county in securing funds by means of which they are enabled to carry out their constitutional and statutory functions."

By the statute quoted and the construction given it, as shown, we are committed to the doctrine that the lien of local assessments must be preserved and maintained up to the point where to further preserve such a lien would cause a sacrifice on the part of the county and the state; or, in other words, that though the municipality which created the local assessment liens may be made a party to the statutory foreclosure suit, that is not done for the purpose of then immediately extinguishing the liens of the local assessments by foreclosure, but for the purpose of limiting those liens as the statute in terms, provides, i. e.:

"In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied

to discharge in full the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the city to discharge all local assessment liens upon such property, and the surplus, if any, shall be distributed among the proper county funds."

By the foreclosure, the city loses its own right to foreclose its local assessment liens and loses all control over the situation, save only as it may have the right to require diligence on the part of the county to raise funds by a resale, and save as the fund so acquired by resale immediately, by the language of the statute, becomes subject, so far as it is in excess of the general tax, to the lien of the local assessment. Or in other words, by the resale, the still unextinguished lien is by the statute transferred from the property to the fund acquired by its resale. Or, restated in still another way, by the act of 1911, the legislature plainly provided and intended to provide that the local assessment liens should not be extinguished by the decree of foreclosure, and if not extinguished by the decree, we can hardly hold that the bidding at the sale following the decree, by a private individual, can be given the effect of a judicial act which will cut off the lien which has existed up to that moment.

Taking the statute as a whole, the legislative intent is clearly discernible that a private person, whether he proceeds by the purchase of a certificate of delinquency and himself forecloses it, or becomes a purchaser at the county's sale, may in either event pay the local assessments or acquire title subject to them, but he has no other choice. There is no word in the statute to indicate that either course will enable him to defeat a lien superior to every other except the general tax lien, and we know of no reason why a private purchaser can, or should, acquire greater rights as a purchaser at a county tax sale than the county itself

can acquire. Surely, if the county, which is acting for itself and the state in collecting the revenue required to maintain the general government, must still take the property charged with the duty to resell it, if possible, so as to pay both the general tax and the assessment, and that privilege is not extended to a private purchaser, he cannot take it freed entirely of the lien of the local assessment, but must either pay the lien or take subject to it.

But it is argued that we have held that, by a tax sale, a new title is initiated, and that a new title can only be initiated at the time of the entry of the decree of foreclosure when the parties are before the court for the purpose of having their respective rights adjudicated. The statement as to our previous holdings is too broad.

"Where the county forecloses a certificate of delinquency on account of general taxes and buys in at the sale and later sells the property to a private individual, it initiates and creates a new title to the property, which the private individual takes free and clear of any kind or character of prior liens." *Maryland Realty Co. v. Tacoma, supra.*

The new title is therefore not initiated until the final resale of the property, because the statute itself preserves both the general tax lien and the local assessment lien on the property until that time. We see no logical reason why the liens may not be so preserved and continued after foreclosure just as statutory rights of redemption are preserved in the ordinary mortgage foreclosure decree.

Finding no statutory provision for the discharge of the lien of local assessments, save only by payment in full or by the county alone on resale in the manner indicated, and having in mind the clear legislative intent to preserve the liens of local assessments up to

the point where to further preserve them would demand a sacrifice by the county or state, we are convinced that the judgment appealed from is right and it is therefore affirmed.

FULLERTON, C. J., PARKER, BEALS, MAIN, and HOLCOMB, JJ., concur.

ASKREN, J. (concurring).—I concur in the majority opinion, but in doing so wish to briefly refer to the case of *Everett v. Morgan,* 133 Wash. 225, 233 Pac. 317, relied upon in the dissenting, and not referred to in the majority, opinion. Special stress is laid upon the words,

".. . . but to require the county to give notice to the city would serve a useful purpose because its *foreclosure would have the effect of entirely cutting off the local assessments.*"

Taken literally, the language is strong support for the view expressed in the dissenting opinion in this case. But the language used was entirely too inclusive. In its fullest sense, it means that, when the county forecloses after notice to the city, the local assessments are entirely cut off, whether the purchaser at the sale is the county or a private bidder. But we know that this is not true as to the county; for if it purchases the property, the local assessment is not entirely cut off in the sense that no right whatever by reason thereof remains. The lien is so far limited that the county takes the property subject to a right of the city to still have the amount of its assessments paid, if the property will sell for enough to pay the general taxes and assessments, priority always being given to the general tax lien. This right of the city is not questioned by anyone.

The statement in *Everett v. Morgan, supra,* was not necessary to the decision, nor was the precise question

here presented disposed of there. The point we there considered was whether the city was entitled to notice, not what results would actually follow from a foreclosure with notice. Indeed, just following the statement relied upon, we stated a good and valid reason for the notice when we said:

"If the county must give notice to the city the latter is thereby given an opportunity to protect itself by paying the tax or deficiency against it."

To this might well have been added the further one that the city should have notice of the foreclosure so that, although it may have no defense as to the legality of the tax, the amount thereof, the amount of its own assessments, or the validity of the foreclosure proceedings, it would still be apprised of the fact of foreclosure and intended sale, and thereafter be enabled to properly present its claim for reimbursement from the county in event of a sale to the county and resale by it. The offending words afford a striking illustration of one of the great difficulties always present before an appellate court, namely, the necessity of the use of language that is not susceptible of a broader interpretation than the facts of the case warrant and the court intends.

MITCHELL, J. (dissenting).—I dissent. Search our statutes, prior to Rem. Comp. Stat. § 9393, Laws of 1911, p. 467, § 40, from end to end, and there will not be found any provision contrary to the view that the foreclosure of a certificate of delinquency and sale by a private holder or by the county did not have the effect of foreclosing and discharging the lien of local assessments. In *McMillan v. Tacoma*, 26 Wash. 358, 67 Pac. 68, we held that, under the statute,

". . . it must be held that the holder of a delinquent general tax certificate is not required to pay local

street assessment liens before he can proceed to foreclose and sell under his general tax lien. He is entitled to a decree establishing his tax lien as paramount and superior to all other liens or charges against the property.''

In *Gustaveson v. Dwyer*, 78 Wash. 336, 139 Pac. 194, the county had become the owner of the property involved, for want of another purchaser, at its general tax foreclosure sale, and thereafter in the statutory manner sold the property to Gustaveson's immediate grantor. Gustaveson was allowed to prevail in the action against Dwyer, who held possession of the property at the commencement of the action. The opinion says:

"By the provisions of Rem. & Bal. Code, § 9230 (P. C. 501, § 205), the lien of general taxes is declared to be superior to all other liens and claims upon the property against which such taxes are charged. The regular foreclosure of such a lien as was concededly had against this lot has, under our revenue law, all the force of a proceeding *in rem, Continental Distributing Co. v. Smith*, 74 Wash. 10, 132 Pac. 631, and vests in a purchaser at a sale held under such foreclosure a new title independent of all previous titles or claims of title to the property. *Hanson v. Carr*, 66 Wash. 81, 118 Pac. 927.''

Indeed, in *Maryland Realty Co. v. Tacoma*, 121 Wash. 230, 209 Pac. 1, in discussing the present statute, the court took occasion to say:

"Before the passage of § 9393 by the 1911 legislature we had consistently held that the payment of local assessments was not a prerequisite to foreclosure of certificates of delinquency for general taxes, whether such suit be by a county or by private individuals. *McMillan v. Tacoma*, 26 Wash. 358, 67 Pac. 68; *Ballard v. Way*, 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993; *Pennsylvania Co. v. Tacoma*, 36 Wash. 656, 79 Pac. 306; *Ballard v. Ross*, 38 Wash. 209, 80

Pac. 439. It was after the rendition of these decisions that the legislature passed § 9393.''

Section 9393, Rem. Comp. Stat., as passed by the 1911 legislature, is set out in the majority opinion. It contains two paragraphs. The first one deals with the procedure foreclosing a certificate of delinquency by a private owner. It provides that he must pay all local assessments or installments outstanding before he commences his action or he must foreclose subject to the lien of such assessments. Local assessment creditors are not made parties to the action nor are they given any notice of it. The purpose of this law was not to collect local assessments but its primary and sole purpose was to prevent speculators from dealing in these record securities which ordinarily produced returns far in excess of the market value of the use of money.

The second paragraph of the section deals with foreclosure by the county. It does not require the county to pay local assessments or installments due nor does it require that it may or can foreclose subject to such assessments. It also differs from the other paragraph in that the county is required to bring in the local assessment creditors by serving the complaint on the city treasurer. It then says that where property is struck off to or bid in by the county at the sale if such property be subsequently sold by the county, the proceeds shall be applied in payment of the tax liens foreclosed and the remainder, to the extent necessary, to discharge local assessments and the surplus, if any, distributed among the proper county funds. But for the latter provision imposing an obligation upon the county in the nature of a trust, it would, of course, take title at its foreclosure sale free and clear of the lien of local assessments, as was provided in Rem.

Comp. Stat., § 11306, Laws of 1901, p. 386, § 4, which says:

"At all sales of property for which certificates of delinquency are held by the county if no other bids are received, the county shall be considered a bidder for the full area of such tract or lot to the amount of all taxes, penalties, interests and costs due thereon, and where no bidder appears, acquire title thereto as absolutely as if purchased by an individual under the provisions of this act."

That is, the county would thus acquire the property free and clear of local assessments. Its present obligations in this respect as a trustee arise only upon the present statute. The statute, however, is wholly silent with respect to the rights of local assessment creditors where, at the county's foreclosure sale, property is purchased by one other than the county. A private purchaser at a county's foreclosure sale is not made a trustee.

This section, § 9393 of the code, was involved and for a certain purpose, construed in the case of *Maryland Realty Co. v. Tacoma, supra.* That case has caused some confusion, or at least temptation to judicial legislation altogether unwarranted, if I understand the majority opinion in the present case. The only question in that case in any way related to the present one, even under the majority opinion in the present case was:

"Does the purchaser from a county of real estate obtained by it under foreclosure of a general tax certificate of delinquency receive a title free and clear of all previous local improvement assessments?"

The decision was in the affirmative; the statutes say so. Manifestly that case would not have been brought to this court but for supposed uncertainty of language, taking the two paragraphs of the section together, the contention of one of the parties being that the terms of the first paragraph providing for pay-

ment of local assessments before commencing the action, or that foreclosure and sale should be had subject to them, applied also in the case of a general foreclosure and sale by the county.

In the course of the opinion, this court said:

"It was the legislative intent to preserve the lien of the local assessment where it could be done without sacrifice to the county and state. If private investors would take the property, they must pay both the delinquent general tax and the local assessments, but if the property be of such small value as that the county must buy it in, then the superiority of the lien for general taxes must be asserted, even to the point of destroying the lien of the local assessment."

This language is seized upon and I think misunderstood and extended in the majority opinion in the present case. In saying:

"It was the legislative intent to preserve the lien of the local assessment where it could be done without sacrifice to the county and state,"

the court had in mind, of course, only those cases where the property is bid in by or struck off to the county at its foreclosure sale. That was the kind of case at hand. Language in an opinion must be understood in the light of the question or point to which it is addressed. In saying, in that case:

"If private investors would take the property, they must pay both the delinquent general tax and the local assessments, etc.",

the court had in mind *investors* in certificates of delinquency who in foreclosing them were required to comply with the terms of the first paragraph of the section, as compared with the terms of the second paragraph of the section governing county foreclosures. It was simply paralleling the two paragraphs in arriving at a decision as to whether the terms of the first paragraph should be applied to the county's fore-

closure. Neither of the sayings was meant to define or discuss the rights of a person, other than the county, who became a purchaser at the county's general tax foreclosure sale. That question was not in the case. That such is true was made more certain, if possible, in my opinion, later on in the opinion where, upon referring to the fact that, when the sale in that case was called, announcement was made that "all bids made would be subject to the lien of all assessments for local improvements," it was significantly said, though possibly not necessary:

"We are not called upon to decide what would have been the result if, under this announcement, the property had been sold to private persons."

In the present case, we have a situation like that last referred to by the court in that case with reference to which the court spoke cautiously. The question here is, Does a private person at a county tax foreclosure sale, where the city has been regularly served, take title subject to local improvement assessments? The majority opinion says he does. That answer and the discussion leading to it, in my opinion, shows a misconception of the *Maryland Realty Co.* case and an improper construction of the statute. The question in this case should be answered in the negative. In the majority opinion it is said:

"There is no word in the statute to evidence that either course [whether a purchaser at a private foreclosure or county's foreclosure sale] will enable him to defeat a tax lien superior to every other, except the general tax lien," etc.,

to which I think reply may be made that there is no word in the statute which says, directly or indirectly, that his purchase at the county's general foreclosure sale is made subject to local assessments.

What was the need at all for the requirement in the county's foreclosure for bringing in local improvement assessment creditors by service on the city treasurer, if the county, upon bidding in or having the property struck off to it, should hold it as a trustee except for the plain and simple reason it was intended to cut off local assessments; and that, if a private person became the purchaser at such sale, he should take the property free from local assessment liens and not as a trustee with reference to them?

The case of *Everett v. Morgan,* 133 Wash. 225, 233 Pac. 317, contains a review of the *Maryland Realty Company* case and also a further discussion of the two paragraphs of Rem. Comp. Stat., § 9393, as applied to the facts in the *Everett* case, wherein the county, in its general foreclosure, had failed to serve a copy of the complaint on the treasurer of the city. It was said in that case:

"No particular good could come from requiring only private holders of certificates to give the notice, because they must, in any event, either pay the local assessments or foreclose subject thereto; *but to require the county to give notice to the city would serve a useful purpose because its foreclosure would have the effect of entirely cutting off the local assessments.* If the county must give notice to the city, the latter is thereby given an opportunity to protect itself by paying the tax or defending against it." (Italics ours.)

That is, after the county's general foreclosure upon notice to the treasurer of the city wherein the city does not "protect itself by paying the tax or defending against it," the local assessments no longer exist— they are entirely cut off—and thereafter former local assessment creditors are recognized only in the event the county takes the property at its sale, and then only on condition and to the extent mentioned in the statute, and even then are recognized to that extent only

because the state through its statute imposes that obligation upon the state and its agent, the county.

In the majority opinion in this case it is said:

"That though the municipality which created the local assessment liens may be made a party to the statutory foreclosure suit this is not done for the purpose of then immediately extinguishing liens of the local assessments by foreclosure, but for the purpose of limiting those liens, etc."

Again, in speaking of the so-called "still unextinguished liens" the majority opinion says:

"Or, restated in still another way, by the act of 1911 the legislature plainly provided and intended to provide that the local assessment liens should not be extinguished by the decree of foreclosure and if not extinguished by the decree we can hardly hold that the bidding at the sale following the decree, by a private individual, can be given the effect of a judicial act which will cut off the lien which has existed up to that moment."

And yet in the *Everett* case, approved by this court *En Banc* upon this point, it was said that notice to the city in a county's foreclosure "would serve a useful purpose because its foreclosure would have the effect of entirely cutting off the local assessments." With respect to this conflict, I prefer to follow the *Everett* case, because it is consistent with the statutes rather than inserting something new into them, and because the *Everett* case is in harmony with the well settled rule of procedure that parties are brought into actions that their rights may be determined and disposed of.

Considering the superiority of the lien of general taxes over all other liens, the county could have been made a trustee upon taking the property at its foreclosure sale without any service upon the city or notice whatever to the local assessment creditors, so that the only purpose for giving them notice is to foreclose

those liens; and if some one other than the county buys at the county's foreclosure sale, he takes it free from the local assessments. His rights in such case are precisely as if none of § 9393 of the code had ever been enacted. The situation simply is not provided for nor taken care of by § 9393, relied on, and he therefore takes free of local assessments as he would under the ordinary judicial sale, or other provisions of the revenue and taxation laws as construed by this court.

That there were reasons in the statute for these different results, under the different circumstances, might be readily enumerated, but the reason and policy of the law in making the distinction was a matter for the legislature alone.

I think the Departmental opinion should prevail.

FRENCH, J., concurs with MITCHELL, J.