[No. 27192.   Department Two.   December 22, 1938.]

THE CITY OF WALLA WALLA, *Respondent*, v. THE STATE OF WASHINGTON, *Appellant*.[1]

*Robt. F. Waldron, John M. Boyle, Jr.,* and *Charles Snyder,* for appellant.

*T. P. Gose,* for respondent.

STEINERT, C. J.—Plaintiff brought this action to quiet title to a city lot, against the state's claim of lien for inheritance taxes.   The court entered a decree adjudging

[1]Reported in 85 P. (2d) 676.

that the state had no lien upon, or interest in, the land. From such decree, the state has appealed.

The real estate involved herein was formerly owned by Mary F. Green, who died testate in 1911. Her estate and the interests of her devisees became chargeable with inheritance taxes. Through some error, the particular land in question was not included in the inventory of Mrs. Green's estate, and, to the extent of such omission, no inheritance tax has ever been paid.

Upon the death of Mrs. Green, her daughter, Orville Green Thomas, became the owner of an undivided one-fourth interest in Mrs. Green's estate. Mrs. Thomas died testate in 1929, and her estate and the interests of her devisees became chargeable with inheritance taxes. Again, through error, Mrs. Thomas' interest in the particular land was not included in the inventory of her estate, and, to the extent of such omission, no inheritance tax has ever been paid.

In 1931, the city of Walla Walla became the owner of a part of the land through foreclosure of its lien for delinquent local improvement assessments levied in 1928. Later, Walla Walla county acquired title to the entire lot through foreclosure of its lien for delinquent general taxes for the year 1928. In 1937, the county, by two deeds, conveyed the lot to the city.

The sole question before us is this: Where the state has acquired a lien upon land for inheritance taxes, does a subsequent assessment, levy, and foreclosure of lien for general taxes extinguish the state's lien for inheritance taxes?

The state, appearing and represented in this action by the supervisor of the inheritance tax and escheat division, contends that the lien for inheritance taxes has priority over the lien for general taxes subsequently levied. This contention is based upon the

inheritance tax statute, which provides, among other things, that:

"The inheritance tax shall be and remain a lien on such estate from the death of the decedent until paid: . . ." Rem. Rev. Stat. (Sup.), § 11201 [P. C. § 7030-164] (Laws of 1937, chapter 106, p. 420, § 1).

Respondent, on the other hand, contends that the lien for general taxes has priority over all other liens, including previously acquired inheritance tax liens. This contention is based on the statute relating to liens for general taxes, which provides, in part, that:

". . . The said lien shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility to or with which said real property may become charged or liable." Rem. Rev. Stat., § 11260 [P. C. § 6882-99].

By repeated decisions of this court, it has become settled law in this state that a general tax lien is paramount over every other lien or burden to which property may be subjected. *Keene v. Seattle,* 31 Wash. 202, 71 Pac. 769; *State ex rel. Craver v. McConnaughey,* 31 Wash. 207, 71 Pac. 770; *Ballard v. Way,* 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993; *Pennsylvania Co. v. Tacoma,* 36 Wash. 656, 79 Pac. 306; *Ballard v. Ross,* 38 Wash. 209, 80 Pac. 439; *Hanson v. Carr,* 66 Wash. 81, 118 Pac. 927; *Maryland Realty Co. v. Tacoma,* 121 Wash. 230, 209 Pac. 1; *Collins v. Spokane,* 123 Wash. 156, 212 Pac. 150; *State ex rel. Friedlander v. Dunning,* 132 Wash. 622, 233 Pac. 8. Any exception to this rule must come through legislative enactment.

When, for want of other purchasers, a county acquires land at a general tax foreclosure sale, the county takes, and holds, the land, not in its proprietary capacity, but in trust for the state and the various taxing municipalities within which the land lies. *Gustaveson*

360

*v. Dwyer,* 78 Wash. 336, 139 Pac. 194; *Shelton v. Klicki-tat County,* 152 Wash. 193, 277 Pac. 839; *Sasse v. King County,* 196 Wash. 242, 82 P. (2d) 536.

If the county, after purchasing the property at such foreclosure proceeding, subsequently sells it to a third party, a new title is thereby initiated and created, and the party purchasing from the county takes title free and clear of any kind or character of prior liens. *Maryland Realty Co. v. Tacoma,* 121 Wash. 230, 209 Pac. 1; *Tacoma v. Fletcher Realty Co.,* 150 Wash. 33, 272 Pac. 43; *Nearhoff v. Rucker,* 156 Wash. 621, 287 Pac. 658; *Moe v. Brumfield,* 182 Wash. 608, 47 P. (2d) 847. Similarly, any exception to this result must be provided by legislative enactment.

■ The state concedes that, ordinarily, general taxes constitute paramount liens, but it contends that Rem. Rev. Stat., § 11260, above quoted, does not operate against the state's lien for inheritance taxes, for the reason that the state is nowhere mentioned in that statute. It relies upon the rule that the state and its agencies are not to be considered within the purview of a statute, unless an intention to include them is clearly manifest, either by express mention or by necessary implication. The following authorities are cited in support of that rule: *La Mesa Lemon Grove etc. Irr. Dist. v. Hornbeck,* 216 Cal. 730, 17 P. (2d) 143; *In re Miller's Estate,* 5 Cal. (2d) 588, 55 P. (2d) 491; *Lossman v. Stockton,* 6 Cal. App. (2d) 324, 44 P. (2d) 397; *People v. Waukegan State Bank,* 351 Ill. 548, 184 N. E. 811; *People ex rel. Barrett v. Oregon State Sav. Bank,* 357 Ill. 545, 192 N. E. 580; *State Highway Commission v. Smith,* 250 Ky. 269, 62 S. W. (2d) 1044; *Nelson v. McKenzie-Hague Co.,* 192 Minn. 180, 256 N. W. 96, 97 A. L. R. 196; *State ex rel. Nixon v. Merrell,* 126 Ohio St. 239, 185 N. E. 56; *State Land Board v. Campbell,* 140 Ore. 196, 13 P. (2d) 346; *Liebes v. Commis-*

*sioner of Internal Revenue,* 63 F. (2d) 870, 92 A. L. R. 938 (C. C. A., 9th); 59 C. J. 1103.

We may, in turn, concede the rule announced in those authorities, for we have heretofore expressly recognized it: *Jenks v. State,* 188 Wash. 472, 63 P. (2d) 369; *State ex rel. Hamilton v. Standard Oil Co.,* 190 Wash. 496, 68 P. (2d) 1031. But that rule does not control a situation such as we have here. This is not a case involving simply a contest for priority as between the state, on the one hand, and private individuals or a political subdivision of the state, on the other. The question here presented is one of priority between two different kinds of tax liens, both of which are held by the state.

Appellant cites *Berry-Shilling, Inc. v. Shuster,* 122 N. J. Eq. 256, 193 Atl. 919, as a case directly in point. But, in that case, the vice-chancellor merely held that the lien of the state inheritance tax was superior to the lien of a municipal tax. No question of priority between two *state* liens was involved.

Rem. Rev. Stat., § 11260, under which respondent claims priority, relates to general taxes, enforceable against all classes of property upon an *ad valorem* basis. *McMillan v. Tacoma,* 26 Wash. 358, 67 Pac. 68. Rem. Rev. Stat. (Sup.), § 11201, under which appellant claims priority, is a special tax, an excise or impost laid upon the privilege of receiving property by inheritance. *In re Fotheringham's Estate,* 183 Wash. 579, 49 P. (2d) 480; I Cooley on Taxation (4th ed.), 136, § 48.

Although these two kinds of tax are concordant in purpose and utility in that they are imposed, and their proceeds used, for the benefit of the public as a whole and, in that sense, are of co-ordinate rank and equal importance, there are, nevertheless, vital differences between them.

The general *ad valorem* tax upon real property lies at the foundation of the tax structure of the state, and its paramount rank is, in concept, well-nigh traditional. Such tax is imposed directly upon property and exacted from all owners thereof. It is levied annually, at a regular time, and operates uniformly according to fixed general rules. In reliance upon the comparative certainty of its collection, public officials administer the affairs of state. That this tax be promptly and fully collected, is of supreme and vital importance to the people of the commonwealth.

The inheritance tax, on the other hand, is not a property tax, but a special tax imposed upon the individual for the enjoyment of the privilege of receiving property on the death of the owner. It did not become a part of our tax system until 1901. Laws of 1901, chapter 55, p. 67. Such tax does not operate uniformly, and the total annual revenue therefrom cannot be predicted with any degree of certainty. Although it is a valuable auxiliary to the general tax, there is no gauge by which its ultimate contribution can be measured. It is not a sure foundation upon which the inexorable and recurring demands of safe government and public need can rest.

There can be no doubt that the legislature has always, in enacting the various tax statutes, had these differences in mind. It must also have had in mind the difference between merely establishing a lien for a tax and fixing priority between various tax liens. To insure the collection of the inheritance tax, the legislature has provided that such tax "shall be and remain a lien on such estate from the death of the decedent until paid." Laws of 1901, chapter 55, p. 67, § 1; Rem. Rev. Stat., § 11201 [P. C. § 7051]. But, on the subject of priority of liens, it has said, since 1891, with refer-

ence to general taxes on real property, that the lien for such taxes

" . . . shall have priority to and shall be fully paid and satisfied before any . . . debt, obligation or responsibility to or with which said real estate [property] may become charged or liable. . . ." Laws of 1891, chapter 140, p. 316, § 93; Rem. Rev. Stat., § 11260.

Rem. Rev. Stat. (Sup.), § 11201, referred to above, does not, expressly or by necessary implication, accord to the lien for inheritance tax priority over the lien for general taxes. Until the legislature provides otherwise, we are constrained to follow the established doctrine.

The decree is affirmed.

SIMPSON, BEALS, GERAGHTY, and ROBINSON, JJ., concur.