[No. 2238–2.   Division Two.   June 10, 1977.]

CHRIS PALZAR, ET AL, *Appellants,* v. THE CITY OF TACOMA, *Respondent.*

---

*Anthony Schwab,* for appellants.

*Robert R. Hamilton, F. H. Chapin, Jr.,* and *Michael E. Cooper,* for respondent.

REED, J.—Plaintiffs Chris and Cathy Palzar appeal from a summary judgment quieting title to certain real property in defendant City of Tacoma. The facts, which are not in dispute, are as follows.

On April 9, 1973, the City of Tacoma held a public sale pursuant to a judgment and order of sale which foreclosed unpaid local improvement assessments charged against various parcels of real property. When there were no bids on the parcels that are the subject of this appeal, that property was struck off to the City of Tacoma, which received a certificate of purchase.

On November 2, 1974, Pierce County conducted a general tax foreclosure sale; included among the parcels of land on

which taxes were delinquent was the subject property, which the Palzars purchased for the amount of the unpaid taxes. The Palzars received tax deeds on November 29, 1974, and on January 22, 1975, they were notified by the City of Tacoma that they had until April 9, 1975, to satisfy the local improvement assessments or the property would be deeded to the holder of the certificate of purchase. The Palzars did not redeem the subject property, and the City of Tacoma, following receipt of a local improvement assessment deed on April 9, 1975, executed a real estate contract for the sale of the subject property to Regal Construction Company, Ltd., and Paul and Barbara Reed.

The Palzars subsequently commenced this suit to quiet title to the subject property in themselves, and Tacoma responded by moving for summary judgment. The trial court granted the summary judgment motion, thereby quieting title in defendant City of Tacoma. On appeal we are asked to resolve only one issue: does a municipality which holds a certificate of purchase lose its right to collect unpaid local assessments when the subject property is purchased by a private citizen at a general tax foreclosure sale? We hold that it does not, and accordingly the judgment of the trial court is affirmed.

In answering the above–propounded question it is important to distinguish two different factual situations. If property subject to assessment liens is put up for sale at a general tax foreclosure proceeding and struck off to the county for lack of other bidders, then a new title is initiated when the county subsequently resells the property, and the assessment liens are transferred to the proceeds of the resale. *Thestrup v. Grays Harbor County,* 12 Wn.2d 545, 122 P.2d 797 (1942); *Moe v. Brumfield,* 182 Wash. 608, 47 P.2d 847 (1935); *Everett v. Morgan,* 133 Wash. 225, 233 P. 317 (1925); *Maryland Realty Co. v. Tacoma,* 121 Wash. 230, 209 P. 1 (1922). RCW 35.49.160 also provides that whenever property is struck off to the county, the proceeds

from the resale shall first be applied to discharge the general tax lien and the excess shall be used to pay any outstanding local improvement assessments.

On the other hand, a different rule is applied when the property is purchased by a private person at the tax foreclosure sale rather than being struck off to the county for lack of bidders.[1] In *Tacoma v. Fletcher Realty Co.*, 150 Wash. 33, 37, 272 P. 43 (1928), the court held:

> [T]he legislative intent is clearly discernible that a private person, whether he proceeds by the purchase of a certificate of delinquency and himself forecloses it, or becomes a purchaser at the county's sale, may in either event pay the local assessments or acquire title subject to them, but he has no other choice.

*See also Ephrata v. Each & Every Lot,* 1 Wn. App. 372, 461 P.2d 574 (1969). In reaching its decision, the *Fletcher* court initially discussed the apparent legislative intent of preserving local improvement assessment liens until their extinguishment becomes necessary in order to maintain the superiority of the general tax lien. *Tacoma v. Fletcher Realty Co., supra* at 35–36. *Fletcher* noted that this policy of preserving local assessment liens was earlier articulated in the *Maryland Realty* case, in which the court considered RRS § 9393 (now codified as RCW 35.49.160) as imposing a duty upon the county to resell property acquired in tax foreclosure sales so as to discharge not only the tax lien, but also any unpaid local assessments. Under this rationale, the superiority of the tax lien need be asserted to extinguish the local assessments only when the property is of insufficient value to satisfy both the outstanding assessments and taxes.

---

[1]Both *Maryland Realty Co. v. Tacoma,* 121 Wash. 230, 236, 209 P. 1 (1922) and *Moe v. Brumfield,* 182 Wash. 608, 611, 47 P.2d 847 (1935), were limited to instances when the property is struck off to the county for lack of bidders, and in both cases the court expressly declined to rule on what would have been the legal effect if the property had been purchased by private persons at the tax foreclosure sale.

In announcing a different rule for those situations when a private person purchases at a tax foreclosure sale, the court in *Fletcher* stated:

> There is no word in the statute to indicate that [a private purchaser can] defeat a lien superior to every other except the general tax lien, and we know of no reason why a private purchaser can, or should, acquire greater rights as a purchaser at a county tax sale than the county itself can acquire. Surely, if the county, which is acting for itself and the state in collecting the revenue required to maintain the general government, must still take the property charged with the duty to resell it, if possible, so as to pay both the general tax and the assessment, and that [course of action] is not extended to a private purchaser, he cannot take it freed entirely of the lien of the local assessment, but must either pay the lien or take subject to it.

*Tacoma v. Fletcher Realty Co., supra* at 37–38. In summation, it is evident that while the need to secure governmental revenues permits the county, in certain circumstances, to assert the primacy of its tax lien, the private purchaser at the tax sale does not occupy a similar position. The policy of preserving local assessment liens requires that he either pay that lien or take title subject thereto.

Before addressing another matter, it should be noted that we are not unmindful of the provisions contained in RCW 35.49.130–.150 inclusive.[2] Those statutes, which are

---

[2] RCW 35.49.130 provides in pertinent part:

"If any property situated in a city or town is offered for sale for general taxes, the city or town shall have power to protect the lien or liens of any local improvement assessments outstanding against the whole or portion of such property by purchase thereof or otherwise."

RCW 35.49.140 provides in pertinent part:

"If a city or town has bid in any property on sale for local improvement assessments, it may satisfy the lien of any outstanding general taxes upon the property by payment of the face of such taxes and costs, . . ."

RCW 35.49.150 provides:

"If property is struck off to or bid in by a county at a sale for general taxes, and is subject to local improvement assessments in any city or town, or has been taken over by the city or town on the foreclosure of local improvement assessments, the city or town may acquire the property from the county at any time before resale and receive a deed therefor upon paying the face of such taxes and costs, without penalty or interest."

applicable when the assessed property is also involved in a general tax foreclosure proceeding, provide several methods by which the city may take affirmative action to protect any local improvement liens. While the argument can be made that the need for such protective measures as contained in those statutes arises only if the city's assessment lien is extinguished by the general tax foreclosure, that contention has previously been considered and rejected. In *Ephrata v. Each & Every Lot, supra* at 376 the court stated:

This position was rejected in the *Fletcher* case.

. . . [W]e are compelled to follow the law announced by our Supreme Court in the *Fletcher* case. If the law is to be changed, it must be changed either through legislative action or by decision of the Supreme Court.

The *Fletcher* case speaks in terms of the private purchaser paying or taking subject to a local improvement assessment *lien;* we now direct ourselves to the question of whether an unpaid assessment survives a tax foreclosure proceeding when the City has foreclosed the assessment lien and holds a certificate of purchase.[3] The Palzars contend that the City's foreclosure of the assessment lien converted the lien into a property interest that was extinguished by the subsequent tax foreclosure sale. We disagree.

After examining the pertinent statutes as a whole, one observation becomes readily apparent: the entire statutory scheme is geared towards insuring that delinquent local assessments will eventually be satisfied. Previously we

---

[3]The foreclosure of local improvement assessments is governed by RCW 35.50. In particular, RCW 35.50.010 provides for the creation and attachment of an assessment lien; RCW 35.50.100 details the proper procedure for foreclosing the lien and obtaining a judgment of sale; RCW 35.50.140 requires the city to bid in at the sale when there are no other purchasers; RCW 35.50.170 provides for the issuance of a certificate of purchase to the purchaser at the foreclosure sale; RCW 35.50.190 establishes a 2–year redemption period; and RCW 35.50.200 provides for the issuance of a local improvement assessment deed to the holder of the certificate of purchase upon expiration of the redemption period.

adverted to the legislative intent of "preventing and avoiding the extinguishment of the liens of local assessments until the very last moment." *Tacoma v. Fletcher Realty Co., supra* at 35. Preservation of the assessment lien is but one manifestation of the public policy which, as evidenced by our statutes, favors the ultimate collection of unpaid local assessments. In view of such public policy considerations and the statutory provisions, it is our conclusion that the legislature did not intend that a general tax foreclosure sale cut off the right of a city holding a certificate of purchase to collect outstanding assessments.

Initially we note that the city, when holding a certificate of purchase, is not acting in its proprietary capacity, but rather is serving as a trustee for the benefit of the local improvement district.[4] RCW 35.50.010. The imposition of a trust relationship on the city indicates that the delinquent assessment is in fact not satisfied when property is struck off to the municipality for lack of other bidders. Under these circumstances, the assessment is properly deemed "still outstanding," and primacy must be given to the policy of assuring that the assessment will ultimately be paid.

Although we have spoken about insuring the payment of outstanding assessments, we realize that, in certain instances, that interest must be subordinated to a greater public need. For example, in *Maryland Realty Co. v. Tacoma, supra,* the court held that collection of the delinquent assessment must yield to the superiority of the general tax lien if the property is of such small value that only one lien may be satisfied. The Palzars have no similar superior interest in the instant case. As purchasers at a general tax foreclosure sale they were subject to the doctrine of caveat

---

[4]*See Tacoma v. Perkins,* 42 Wn.2d 80, 83, 253 P.2d 957 (1953). Additionally we note that prior to receipt of a certificate of purchase, the city acts in the capacity of a collection agent. RCW 35.49.010 charges the city treasurer with the duty of collecting the assessments and depositing them in a separate fund maintained in the name of the local improvement district. RCW 35.50.030 further requires the city, as part of its duty to collect the assessments, to initiate foreclosure proceedings under certain defined instances of delinquency.

emptor, and hence occupy a much less favorable position than the county did in *Maryland Realty. Pierce County v. Newbegin,* 27 Wn.2d 451, 178 P.2d 742 (1947); *Shelton v. Klickitat County,* 152 Wash. 193, 277 P. 839 (1929). When this is coupled with the fact that the local assessments and certificate of purchase are matters of public record, and the fact that the deeds to the Palzars recited that title was "subject to all local and special assessments," we can perceive of no reason for permitting the Palzars to prevail.

In conclusion, when Tacoma was issued a certificate of purchase, it had a variety of options available for collecting the outstanding assessment: it could accept redemption in the amount of the delinquent assessment (RCW 35.50.190); it could assign the certificate of purchase for value (*see* RCW 35.50.180); or it could await expiration of the redemption period and the issuance of a local improvement district deed, and then satisfy the assessment by leasing or selling the property (*see* RCW 35.50.200, RCW 35.50.030). Under our holding the City had the additional alternative of allowing the property to be sold at a general tax foreclosure sale and collecting the assessment either through the proceeds of the sale, if sufficient, or by having the purchaser take subject to the outstanding assessment. The Palzars, having had actual notice of their opportunity to redeem the subject property, and with this notice, having elected to rely upon their interpretation of the law, must now suffer the consequences of the incorrectness of their interpretation. Accordingly, the judgment of the trial court is affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied July 25, 1977.

Review denied by Supreme Court January 20, 1978.