OTTO *v.* ANN ARBOR RAILROAD CO.

RAILROADS—CONTRIBUTORY NEGLIGENCE—CROSSINGS—ANIMALS.

> The failure on the part of a boy driving across a railroad track to look for a car, after he had reached a point 90 feet from the rails, barred a recovery for a horse killed, where he looked in one direction and then devoted his attention to the other side, and if he had turned to look again within 70 feet of the crossing he might have seen the approaching car, and where he was 12 years of age and knew the nature of the danger, etc.

Error to Washtenaw; Kinne, J. Submitted October 8, 1915. (Docket No. 27.) Decided December 22, 1915.

Case by Gustavus Otto against the Ann Arbor Railroad Company for the negligent killing of a horse. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*Alexander L. Smith* and *Gustavus Ohlinger,* for appellant.

*Arthur Brown* (*E. R. Sunderland,* of counsel), for appellee.

PERSON, J. In the township of Northfield, in Washtenaw county, the tracks of the Ann Arbor Railroad Company run in a northerly and southerly direction across a public highway running east and west, known as the Nannery road. On the afternoon of September 5, 1914, a horse owned by plaintiff, while being driven by plaintiff's son, Lawrence, was struck by one of the so-called gasoline cars operated on defendant's road and injured to such an extent that it had to be killed. This action is brought to recover the value of the horse.

The boy was approaching the railroad track from the west, and was very familiar with the crossing; his home being in the near vicinity. When he had come to within from 90 to 100 feet of the crossing, he slowed his horse down to a walk and looked north, but without seeing any car in that direction. He continued to approach the track, but from that time on confined his attention entirely to the south side of the highway. On that side the view was obscured by a field of standing corn and other obstructions, so that a car coming from the south could not be seen until the traveler had reached the railroad right of way. The boy says that it was because of these obstructions that he gave his attention entirely to the track on the south side. The car that struck the horse came from the north, and was not noticed by the boy until it had reached the cattle guards north of the highway. It was then

too late to prevent the horse from going upon the railroad track. The car hit the horse on the left front shoulder and broke its left front leg. From the point where the boy looked north, about 90 or 100 feet west of the railroad track, the view was somewhat obscured by trees and a fence with vines growing upon it; but, if the boy had again looked towards the north at any point within 70 feet of the track, the approaching car could have been plainly seen. On the railroad grounds, 40 rods north of the highway, was the whistling post, and a short distance beyond that the track went into a cut some 8 to 10 feet deep. South of the whistling post, and between that and the highway, was another shallower cut, but the car on the railroad track could have been plainly seen at any point within 30 rods of the highway.

The negligence charged against the defendant company was the failure of its servants to give warning of the car's approach by either sounding the whistle or ringing the bell; and this negligence was fully substantiated by the evidence, inasmuch as the defendant offered no proofs at the trial. The defense insisted upon is that the boy was guilty, upon his own showing, of contributory negligence in going upon the track without again looking north before doing so; and the court was requested to instruct the jury to that effect. This was refused; and the jury gave the plaintiff damages to the amount of $250.

The instruction requested should have been given. It is true that this boy driving the horse was some 3 months under 12 years of age; but from his own testimony it is clear that he understood the dangers in crossing the railroad track as well as any adult would have understood them. He lived nearby, and had made this crossing frequently, not only on foot, but driving as he was this day. He knew fully the necessity of

watching for an approaching car, and did, indeed, look towards the north for one, when 90 or 100 feet west of the crossing. The fact that the view to the south was obscured was not a sufficient reason for his failure to cast his eyes again to the north before going upon the track. Had he done so at any point within 70 feet of the crossing, he would have seen the car. His horse was going but little more than 2 miles an hour, was in no fear of the car, and could have been safely stopped almost instantly. From where he did look north, back some 90 or 100 feet, judging by the comparative rates of speed at which the horse and car were going, as shown by the testimony, the latter must have been in, or close to, the deeper cut that has been mentioned. At any rate there were obstacles hiding the view of the car when it was more than 30 rods north of the highway. It was certainly negligence, under the circumstances, for the boy not to look again before getting into a place of danger. The rule, as applied to children, has been so lately and so fully discussed by this court as not to require repetition here. *Mollica* v. *Railroad Co.,* 170 Mich. 96 (135 N. W. 927); *Knickerbocker* v. *Railway Co.,* 167 Mich. 596 (133 N. W. 504); *Perego* v. *Railway Co.,* 158 Mich. 225 (122 N. W. 535); *Trudell* v. *Railway Co.,* 126 Mich. 73 (85 N. W. 250, 53 L. R. A. 271); *Henderson* v. *Railway Co.,* 116 Mich. 368 (74 N. W. 525).

Judgment must be reversed, and no new trial ordered.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.