PERCY W. BARLOW, HARRY W. BARLOW, MARY A. BRINES, E. D. WHITLEY, GEORGE H. OLD, THE INTERNATIONAL TRUST CO., as Trustee for MARY T. GILL, INEZ I. SKEMP, C. R. MASSEY and the FIRST NATIONAL BANK, a Corporation, of Sheridan, Wyoming,

*Plaintiffs and Appellants,*

v.

MARIE J. LONABAUGH and A. W. LONABAUGH, et al.,

*Defendants and Respondents,*

AND

C. R. MASSEY,

*Plaintiff and Appellant,*

v.

MARIE J. LONABAUGH and A. W. LONABAUGH, et al,

*Defendants and Respondents.*

(No. 2245; Feb. 26, 1945; 156 P. 2d 289)

For the Plaintiffs and Appellants the cause was submitted upon the brief of *Mr. H. Glenn Kinsley,* of Sheridan, Wyoming.

For the Defendants and Respondents the cause was submitted upon the brief of *Mr. A. W. Lonabaugh,* of Sheridan, Wyoming.

## OPINION

BLUME, Chief Justice.

The two actions herein, brought sometime before April 6, 1938, were consolidated for trial. They were

brought for the purpose of foreclosing special assessment liens in paving districts 26 and 27 of the City of Sheridan, Wyoming. The property involved herein is situated in these districts, and defendants claim under a conveyance from Sheridan County, after tax deeds had been issued to that County, and claim that their rights are superior to the rights of the plaintiffs. The court so held, and the plaintiffs have appealed.

Both actions were brought on behalf of the plaintiffs, or plaintiff, and all those situated similarly. Plaintiffs in the first action are holders of bonds issued pursuant to paving assessments in paving district No. 27 in Sheridan, Wyoming. Plaintiff in the second action is holder of bonds issued pursuant to paving assessments in paving district No. 26 in Sheridan, Wyoming. All these bonds were issued on June 1, 1924, and payment thereon was in default, when the actions herein were brought and the proceedings herein were had. Assessments had been made against the lots in controversy in this case, and a considerable amount is due thereon. The validity of the proceedings leading up to the assessments and the issuance of the bonds, and the rights of plaintiffs herein, except as to the defendants, are not in any way questioned, so that no further reference thereto needs to be made. And for convenience the plural will be used in referring to the plaintiffs or plaintiff and whether they are holders of bonds in the one paving district or the other. Only the rights claimed by defendants need to be mentioned in detail.

The property of defendants in paving district No. 27 consists of Lots 2, 4, 6 and 8 of Block 83, and Lots 1, 3, 5, 7, 9, 11 and 13 of Block 14 of the Grinnell Addition to the City of Sheridan, Wyoming. This property will hereafter be referred to as the Dana lots, they being owned by E. L. Dana until December 31, 1937. The facts as to the title and the acquisition thereof by

defendants are, as found by the court on February 4, 1942, pursuant to stipulation of the parties, as follows: There were duly assessed against these lots, for the year 1932, general county and state taxes in the sum of $434.05. The taxes not being paid, the property was sold therefor on September 15, 1933, to Sheridan County for $471.77. The validity of such assessment and sale is not questioned. Before the period of redemption expired, E. L. Dana, the owner, advised the County Treasurer of Sheridan County (possibly pursuant to an informal notice) that he did not want to redeem the property from the tax sale, and he and his wife, on December 31, 1937, gave a quit claim deed conveying the property to the County. Thereafter on the same day, the Treasurer of Sheridan County executed a tax deed, conveying the property to that County. No formal notice of the expiration of the time of redemption was given. On April 6, 1938, the Board of County Commissioners of Sheridan County conveyed the property to the defendants, Marie J. Lonabaugh and A. W. Lonabaugh, for a consideration of $400. The defendants have been in possession of the property ever since, and paid taxes thereon for the year 1938 in the sum of $168.17; for the year 1939, in the sum of $167.31; for the year 1940, in the sum of $163.33. The money paid by defendants has not been repaid, and no tender of repayment has been made by plaintiff.

The property of the defendants in paving district No. 26 consists of Lots 18, 19 and 20 of Block 40 of Sheridan Land Company Addition to the City of Sheridan, hereinafter referred to as the Coffeen lots. These lots were owned in 1930 by Jennie H. Coffeen, who died on November 5, 1931. The lots were duly assessed for general state and county tax in 1930 in the sum of $62.40. The taxes not being paid, the property was

sold therefor on July 10, 1931, to Sheridan County for $70.39. The validity of the assessment and sale is not questioned. On August 14, 1935, the County Clerk of Sheridan County duly mailed a notice by registered mail of the expiration of the time for redemption and of the intended application of a tax deed to Jennie H. Coffeen Estate and Donald H. Coffeen. This notice will hereafter be set forth at length. The property not being redeemed the Treasurer of Sheridan County executed a tax deed on January 30, 1936, conveying the property to Sheridan County. On April 25, 1936, Donald H. Coffeen, heir-at-law and successor to the title of Jennie H. Coffeen, and his wife executed a quit claim deed to the property to said County. On April 6, 1938, the Board of County Commissioners of Sheridan County, in turn, for the consideration of $150, conveyed the property to the defendants, who have ever since been in possession thereof and paid the taxes thereon for 1938-1940 in the sum of about $36.00 each year. The amounts paid by defendants have not been repaid and no tender of repayment has been made by plaintiffs.

Pursuant to this finding of facts, the trial court held that the title of the defendants is valid and superior to the lien of the plaintiffs, and quieted that title as against the plaintiffs as asked by the defendants.

I. Section 115-2303 Rev. St. 1931 provides that taxes upon real estate are "a perpetual lien thereon against all persons or corporations except the United States and this State." We held in Board of County Commissioners v. Bench Canal Drainage District, 56 Wyo. 260, 180 P. 2d 590, where the question was discussed at length, that a lien for general taxes is superior to the lien of a special assessment unless the statute specifically provides the contrary. In that case we held that the former is superior to the lien of drain-

age assessments. Counsel for the plaintiff contends, however, that, conceding that the rule might be correct generally, it does not apply in this case, because of different statutory provisions, and because the case just mentioned was an action for foreclosure, permitted to be brought under Chapter 84, Session Laws of 1935, amended by Chapter 84, Session Laws of 1937. We shall have occasion to refer to that statute again later. We fail to see the force of the argument that the case has no bearing herein in the absence of a statute showing the contrary to that above mentioned. If a lien for general taxes is in fact paramount to special assessments, the mere fact of enforcing the paramountcy by one method rather than another should make no difference, unless, perchance, otherwise provided by statute.

Counsel for plaintiffs state that "defendants do not have nor assert a tax lien, and are not attempting to foreclose one. They merely have a quit claim deed from the county, and the county in turn acquired its title by deed from the owner and not through a completed tax sale. * * * In purchasing a quit claim of the property from the county, the county's claim or lien for general county and state taxes was discharged. From then on the defendants had the property as any private purchaser. When the county's prior lien for general taxes was paid and satisfied, the county no longer had a lien, and there was no question remaining as to priorities of liens as only one lien remained, namely the special assessment liens." These statements are in some respects inadequate, and for the most part erroneous. Counsel have cited us to Investment Company v. Tacoma, 132 Wash. 645, 233 P. 287. That case is not in point herein, as will appear below. They also cite us to Note 133 A.L.R. 920. It appears therefrom that in some cases it is held that while the land is held by the state or county, the lien of special

assessments is suspended, but that it may be enforced when the property passes again into private ownership. The cases gave us some trouble, were considered, and in general terms referred to when we decided the case of Board of County Commissioners v. Bench Canal Drainage District, supra, and we refused to follow these cases and explained the reason therefor. The case of White v. Thomas, 91 Minn. 295, 98 N.W. 101, dealt with this situation. The court said:

"It is further claimed by respondent that the lien of the state for general taxes, after it has become the subject of private ownership, is subordinate to the liens of the city for local assessments. If this means, as we understand that it does, that the purchaser of the lien of the state takes it subject to all then existing liens of the city for local assessments, the claim is clearly wrong. Such a rule would practically emasculate the law giving to the state a paramount lien, for the only way the state can realize on its lien is to sell, subject to redemption, the land upon which the lien rests, to private parties. Now, if the state could not on such a sale vest in the purchaser its priority of lien over then existing local assessments, it would be of little practical value to the state, for, in cases where the amount of the local assessment liens approximately equaled the value of the land on which they rested, no one would buy the state's claim. We hold, then, that a purchaser of the lien of the state takes it with its right of priority over all the then existing liens of the city for local assessments, without reference to the time when the state lien attached."

The cases relied on by plaintiffs could have been followed in the Bench Canal District case more readily than in the case at bar, for the statute relating to drainage assessments gave color to the theory, as expressly stated by the statute relating to such districts, that "no sale of such property to enforce any general state, county, municipal, or school tax, or other lien shall extinguish the lien of such assessments." Section 22-1521 Rev. St. 1931 specifically states that the lien

for special assessments "shall be paramount and superior to any other lien or incumbrance whatsoever therefore or thereafter created except a lien for assessments for general taxes", thus clearly stating that the lien for general taxes shall be paramount. Section 22-1540 Rev. St. 1931 provides:

"The holder of any certificate of sale or delinquency for general taxes shall, before commencing any action to foreclose the lien of such certificate pay in full all local assessments or installments thereof outstanding against the whole or any portion of the property included in such certificate of sale or of delinquency, or, he may elect to proceed to acquire title to such property subject to certain or local assessment liens thereon, in which case the complaint, decree of foreclosure, order of sale, sale, certificate of sale and deed shall so state. If such holder shall pay local assessments, he shall be entitled to twelve per cent. interest per annum on the amount of the delinquent assessments or delinquent installments thereof so paid from date of payment. In any action to foreclose any lien for general taxes upon any property a copy of the complaint shall be served on the treasurer of the city or town within which such property is situate within five days after such complaint is filed. In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied to discharge in full the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the city to discharge all local assessment liens upon such property, and the surplus, if any, shall be distributed among the proper county funds."

The case of Investment Company v. Tacoma, supra, was decided under the first portion of a similar statutory provision which is not applicable here, and the case, accordingly, is not in point herein. The case of Maryland Realty Company v. Tacoma, 121 Wash. 230, 209 P. 1, was decided under the last part of the same

Washington statute, almost identical with the last part of Section 22-1540. In that case the court held:

"If private investors would take the property, they must pay both the delinquent general tax and the local assessments; but if the property be of such small value as the county must buy it in, then the superiority of the lien for general taxes must be asserted, even to the point of destroying the lien of the local assessment. Any other construction would greatly hamper and hinder the state and county in securing funds by means of which they are enabled to carry out their constitutional and statutory functions. * * * Where the county forecloses a certificate of delinquency on account of general taxes, and buys in at the sale, and later sells the property to a private individual it initiates and creates a new title to the property, which the individual takes free and clear of any kind or character of prior liens."

In City of Walla Walla v. State, 197 Wash. 357, 85 P. 2d 676, 119 A.L.R. 1327, the court stated in part:

"If the county, after purchasing the property at such foreclosure proceeding, subsequently sells it to a third party, a new title is thereby initiated and created, and the party purchasing from the county takes title free and clear of any kind or character or prior liens."

In Thestrup v. Grays Harbor County, 12 Wash. 2d 545, 122 P. 2d 797, decided in 1942, the court stated:

"It has long been established by the decisions of this court that, in the absence of exception made by legislative enactment, a purchaser at resale of property acquired by a county through the foreclosure of a general tax lien takes title free from the lien of all local improvement assessments past due. Maryland Realty Co. v. Tacoma, 121 Wash. 230, 209 P. 1; Tacoma v. Fletcher Realty Co., 150 Wash. 33, 272 P. 43; Nearhoff v. Rucker, 156 Wash. 621, 287 P. 658; Moe v. Brumfield, 182 Wash. 608, 47 P. 2d 847. See, also, Walla Walla v. State, 197 Wash. 357, 85 P. 2d 676, 119 A.L.R. 1327; Gengler v. King County, Wash., 121 P. 2d 346."

It is clear under these decisions, and others which

might be cited, that a deed from the county to a private party cuts off all special assessment liens, provided, of course, the proper preliminary proceedings have been had, and counsel is clearly in error in his assertion that defendants are not entitled to rely on any lien for general tax in support of their title.

II.  Section 115-2343 Rev. St. 1931, provides that "the original owner of any such real estate, so bid in by the county, shall have three years from the date of such purchase by the county in which to redeem the same from the county, or from anyone who purchases said property from the county during said three years' period." Notice by registered mail, or personal service, of the expiration of the time of redemption was required to be given by the county, or its assignee, at least three weeks before the expiration of the time of redemption, to the person in whose name the property was taxed and to the occupant, if any. It does not appear herein that the lots involved herein were occupied. By amendment of the section in Section 6, Chapter 72, Session Laws, 1933, the period of redemption was extended to four years. For the purpose of this case, we shall consider that period applicable herein throughout. In Chapter 32, Session Laws, 1935, the notice to be given was fixed at three months, instead of thirty days as previously. By a further amendment in Chapter 37, Session Laws of 1937, notice was also required to be given to a mortgagee, if his address could be found.

On December 31, 1937, the statutory time for redemption of four years had expired as to the Dana lots. As previously stated, Dana, the owner, had advised the County Treasurer of Sheridan County that he did not want to redeem the property from taxes, and he and his wife thereupon executed a quit claim deed to the property to the county on December 31,

1937, and a tax deed, too, was issued to the county on that date by the Treasurer of Sheridan County. Counsel for plaintiffs claim that such proceedings do not constitute compliance with the statute as to notice to be given to the party in whose name the land is assessed.

Strange as it may seem, no authorities have been found that have passed on a situation like this. The point involved is not free from doubt under the authorities (collected in 140 A.L.R. 671-676) which hold that notice to all parties mentioned in the statute is indispensable. Technically, of course, there was not a compliance with the statute, and if technicalities must govern herein, then, of course, the county did not acquire a proper tax title. It is generally held that statutory provisions prerequisite to a tax title must be literally, or at least substantially, complied with. That is because the law favors the owners. Still we can hardly believe that even in tax matters all rules of reason have ceased to exist. In Andrews v. North Side Canal Co., 52 Ida. 117, 12 P. 2d 263, the court stated:

"The record owner of the land is not here contesting the validity of the tax deed. Its validity is questioned by cross appellant, whose claim of interest in the land and water rights is grounded upon its liens based on unpaid assessments for maintenance and operation. Where such questions are raised, the burden is cast upon the party seeking to invalidate the tax deed to show that he was prejudiced or injured by non-compliance with statutes before the tax deed will be declared void."

The plaintiffs have not shown that they have in any way been prejudiced by the failure to give formal notice to E. L. Dana, and if we take the foregoing statement at its face value, they have nothing of which they can complain. However, we need not determine

how far the rule of that case should be carried. It shows, in any event, that even a requirement of strict compliance with a statute in tax matters, should not be carried to the point of absurdity. If the notice required by the statute were intended to be given to the world so that everyone would receive knowledge, there would be force in the contention. But no such intention can be gathered from our statutes. Notice by registered mail given to the parties required to be notified was sufficient. Under Chapter 37, Session Laws, 1937, already mentioned, substituted service by publication was not required to be given, in cases in which the county received the tax deed, even when personal notice was not possible. Suppose that the parties required to be notified by statute should all waive notice in writing. That would not be a literal compliance therewith, and yet would it be reasonable to say that the waiver of such notice would be ineffective? We hardly think so. And while what the Danas did is not the same as signing a written waiver of notice, the giving of a quit claim deed has the identical effect, and so should be treated. We do not think, as counsel for plaintiff contends, that these transactions should be treated as ordinary transactions of sale and conveyance to the county and then a sale and conveyance from the county to defendants. The conveyance of the Danas was made for only one purpose, namely, to carry out the verbal statement of waiver of the right of redemption. Counsel for plaintiff argues that if a tax title can be acquired in the manner in which it was acquired in this case, it could be acquired immediately after a tax sale, by the owner of property then giving a deed to the property. We do not think that this follows as a result of what we have said. The time given by statute for redemption is a valuable right which we do not think he can waive in prejudice of parties who have a lien on the property. The owner's right in the property gradually

diminishes, in a sense at least, as the time for redemption flows by, and when the time, fixed by statute, has expired, the only right left him or his successors in interest is the right to insist upon compliance with the statute as to notice and to redeem until that has been done. His right in the property before it commences to diminish as here mentioned, or during the process, cannot be treated as the same, and is not the same as it is when the process of diminution is completed. And so a waiver of a right, like that to notice, at or close to the vanishing point of any right in the property, cannot be treated of the same dignity as a voluntary conveyance of the property before that point has been reached.

III.  Before a deed was issued to the county for the Coffeen lots the county clerk mailed a notice by registered mail of the time of redemption and when deed would be issued to the county in the following terms:

"STATE OF WYOMING     NO. 75<br>County of Sheridan

Jennie H. Coffeen Estate,
  % Donald H. Coffeen
    452 West Works Street
      Sheridan, Wyoming

NOTICE

You are hereby notified that July 10, 1934, is the date of expiration for the redemption from Sheridan County for the following described property:

Lot 15, Block 27; Lots 18, 19, 20, Block 40, Sheridan Land Company Addition. Assessed to Jennie H. Coffeen for the year 1930.

(Amount due to date $314.02.)

which was bid in for Sheridan County by its Treasurer at the tax sale held on July 10, 1931, for the delinquent taxes for the year 1930. Certificate of Purchase No. 2667.

Unless said property is redeemed on or before November 18, 1935, the County Treasurer will execute a

Tax Deed to Sheridan County, as provided by law. Sec. 115-2343 Wyoming Revised Statutes 1931.

B. B. Hume

Reg. No..................                              County Clerk."

Counsel for plaintiff contends that the notice is insufficient because it does not plainly state the time for redemption, and that the case comes within the ruling of Burns v. State, 25 Wyo. 491, 173 P. 55, and State ex rel. v. Bramblette, 43 Wyo. 470, 5 P. 2d 279, 82 A.L.R. 497. In both of these cases the notice stated that the time of redemption had expired before the notice was given, and then stated that application for a tax deed would be made some time in the future, without, however, stating or even indicating that the owner would still have a right to redeem before the application for a deed would be made. In other words, the notice given indicated that the owner had then, at the time of giving of the notice, no further rights in the property. The notice given in this case differs in a material and important respect. It gave the wrong date of the time of redemption (figuring that the four year period was then in force), it is true, but stated further that "unless said property is redeemed on or before November 18, 1935, the County Treasurer will execute a tax deed to Sheridan County." In other words, the owner was plainly given to understand that if he would redeem before November 18, 1935, no tax deed would be issued. It was stated in the Burns case, which statement was quoted in the Bramblette case, that "the purpose of notice in either event is to bring to the person entitled to redeem, knowledge that the land has been sold for taxes and within what time the same may be redeemed from sale." It would seem that these purposes were fully subserved by the notice given in this case, and the erroneous statement when the period of redemption expired could hardly mislead anyone. That the owner was not misled is clearly

shown by the fact that in April, 1936, he—Donald Coffeen, successor in interest of Jennie H. Coffeen— gave a quit claim deed to Sheridan County. Taking that fact into consideration along with the actual notice given, we hesitate to say that the trial court erred.

IV.   Plaintiffs contend that the right to notice of the expiration of the right of redemption is coextensive with the right to redeem; that is to say, that if they had the right to redeem, notice should have been given them. They call our attention to Hackett v. Linch, 57 Wyo. 289, 116 P. 2d 871, wherein we cited Sanders v. Ellis, 42 Ark. 215, in which it was stated that almost any right in land amounts to an ownership which entitled a man to redeem. There is no doubt that the right to redeem should be construed liberally. See Black, Tax Titles (2d Ed.) Sec. 267; Cooley, Taxation (4th Ed.) Section 1565. But it does not follow that a right to notice to redeem is necessarily coextentive with it. Counsel have not cited us to any case so holding, and the indication in the authorities is to the contrary. Jensen Livestock Co. v. Custer County, 113 Mont. 285, 124 P. 2d 1013; Andrews v. North Side Canal Co., supra. Thus in Ellsworth v. Low, 62 Iowa 178, 17 N.W. 450, it appears that notice was required to be given to the occupant and the person in whose name the land was assessed. No other notice appears to have been given, but the court held that a mortgagee was entitled to redeem. In First National Bank v. Mohall State Bank, 53 N.D. 319, 206 N.W. 411, it is held that no one except the party specified in the statute is entitled to notice. See also Cooley, Taxation (4th Ed.) Section 1568, 61 C.J. 1260. While Black, Tax Titles (2d Ed.) Section 366 holds that a mortgagee may redeem, the same author in Sec. 341 states that "the mere fact that one holds a mortgage on land which has been sold for taxes will not entitle him to be served with the notice to redeem from such sale, unless the

statute contains provisions which clearly give him the right." See also Smythe v. Neff 123 Ill, 310, 17 N. E. 702. These authorities indicate that the right to redeem may be broader than the right to notice to redeem. The statutory provisions govern.

The statute in 1937 provided, as already stated, that notice should be mailed to a mortgagee if his address could be found. It is contended that the holders of special assessment lien should, under a liberal construction of the statute, be held to be included in the term "mortgagee," and that as to the Dana lots, at least, notice should have been given them. If that is true, then, of course, a judgment lien-holder, a mechanic's lien-holder, and a holder of any other kind of lien which the parties might contrive, and which in some instances might not be easily found upon the records, would also be included in that term. We hesitate to extend the meaning of the term that far. If the legislature meant to have every lien-holder given notice, it chose poor language to express its intention. The holder of a special assessment lien is not a mortgagee. A mortgage is a voluntary conveyance by the owner. A special assessment lien is created notwithstanding the dissent of the owner. Even from a practical standpoint, holders of special assessment liens are situated much differently from a mortgagee, or for that matter from the other lien-holders above mentioned. Numerous bonds are usually issued for assessments in a paving district, and they are generally held by numerous men. If notice were given to the city, as trustee for the bondholders, it can do nothing except notify the bondholders, and concerted action by them would probably be difficult to obtain. The city would have no funds with which to make the redemption, so far as we have found. Section 21-1528 Rev. St. 1931, provides that "all moneys collected by the treasurer upon any assessments under this article * * * shall be

used for no other purpose than the redemption of warrants and bonds drawn or issued against that fund," and we find no authority that any warrant may be drawn against it for redemption of property from a tax sale for general taxes. Hence, even under a liberal construction, it is difficult to see how we can construe the term "mortgagee" to include holders of special assessment liens so as to entitle them to notice. Nor, as indicated, is anything herein said in contradiction of the general rule that all parties interested should have the right to redeem the property at any time before the expiration of the time of redemption. When no notice is required to be given them, it would, of course, be necessary to watch the public records more carefully than otherwise. In this case they had notice of the tax sales herein for a period of five to seven years.

V. It would seem that the result reached in these cases should not be different than that above indicated, even if we should hold that some of the proceedings leading up to the tax deeds were defective and not strictly according to law. It has been stated above, and it was stipulated by the parties, that the plaintiffs have not offered to pay to the defendants the amount paid out by the latter, though they had ample opportunity to do so after the defendants filed their answer in these cases. And plaintiffs still insist in their brief that no repayment, or offer to repay was necessary, contending that "when the County's lien for general taxes was paid and satisfied, the county no longer had a lien and there was no question remaining as to priorities of liens, as only one lien remained, namely the special assessment liens." Plaintiffs show no disposition to claim, as an alternative relief herein, the right to redeem. And if we may venture the necessary conclusion to be drawn from the circumstances herein, it is that the plaintiffs have no intention to

repay such amounts or to redeem the property. If that is correct, it is difficult to see the usefulness of the persistent arguments herein that the right of redemption of plaintiffs has not been cut off, and since we have held, and hold that the lien of the general taxes is superior to the lien of the special assessments herein, the only right which, if the tax title is defective, plaintiffs could have in any event is one after the superior liens have been paid, unless, of course, the prior lien was extinguished, which is not true as herein shown. The plaintiff's actions herein are in equity. They seek to foreclose a lien asking that it be held superior to other liens. They in effect seek to cut off other liens, and quiet their title against them. The effect in such action would be the same as in an action to quiet title, so that the rule herein should be no different than the rule in such case, so far as the point under discussion is concerned. Nor should plaintiffs be permitted to have any greater rights than the owner would have who claims that a tax title is defective. In Brewer v. Folsom, 43 Wyo. 433, 5 P. 2d 283, it appears that plaintiff had been defendant in ejectment in which he was defeated because of a defective tax title. He did not set up his rights in that action, but later brought an independent action, seeking to recover the taxes paid by him, some of which had been levied long before the defendants became owners of the land. We held that though the plaintiff probably would have had the right of retention, he could not bring an independent action, especially after the land had passed through five different hands during the times that the tax sought to be recovered had been levied, and that it would be harsh to permit the recovery in such independent action against such defendants, unless clearly permitted by law. That decision, then, has no bearing in this case. But we stated, in the course of the opinion, the rule that should be applicable in this case, saying:

"It is generally held that where the owner of the land sued in equity for affirmative relief, he may, as a condition for relief, be required to reimburse one who in good faith has acquired a tax title and has paid subsequent taxes on the land, on the principle that he who asks equity must do equity. Holland v. Hotchkiss, 162 Cal. 366, 123 Pac. 258, L.R.A. 1915 C 492, and authorities cited; Nowler, et al. v. Coit, 1 Ohio 519, 13 Am. Dec. 640. It may be that the same rule should be applied where a man brings an action in ejectment, for success in that action in effect, in the language of the California case just cited, invalidates the tax sale or deed. That the right of retention existed in such case under the civil law is clear from the citations set forth above."

The legislature perhaps overruled even the limited actual holding in that case when it enacted Chapter 76, Session Laws of 1933, Section 1 of which reads as follows:

"If after the sale or conveyance of any real estate for taxes or assessments it shall be discovered or adjudged that the sale or conveyance was invalid for any cause for which the purchaser has no legal right of recovery from the county or other taxing authority, the purchaser or his assigns shall have a lien upon and against said real estate for the amount of money equitably due on any taxes for which said property was sold or conveyed together with any subsequent taxes paid thereon by the purchaser or his assigns together with interest on such amount at the rate of eight per cent per annum and said lien may be enforced in any court of competent jurisdiction."

Here is evidenced a clear desire on the part of the legislature that a purchaser of a tax title and his assigns shall be entitled to be reimbursed for money justly due for taxes and paid by them. The same legislative desire, in connection with payment of general taxes, is manifested in Chapter 84, Session Laws of 1935, amended by Chapter 84, Session Laws of 1937, though we have not investigated whether the exact

situation of defendants herein would be covered thereby. That statute provides for an action for the enforcement of the rights therein mentioned, but that is specifically mentioned as a cumulative remedy. In Black on Tax Titles (2d Ed.) Section 442 the author states:

"The maxim, 'he that seeks equity must do equity,' requires that a party seeking to have a tax deed set aside as a cloud upon his title to real estate must offer to repay to the purchaser the amount of all taxes and costs, paid by him, which were a just and legal charge upon the land, with interest; and it is error to set aside a tax sale for mere irregularities, not affecting the substantial justice of the tax, without requiring such payment."

The same rule is stated in 61 C. J. 1409, where it is said:

"It is ordinarily a condition precedent to the right to maintain a suit to quiet title and cancel a tax deed that plaintiff first pay or tender the tax title claimant reimbursement for the amount expended by him for taxes, interest, and penalties, the doctrine resting upon the equitable principle that he who seeks equity must do equity."

In 26 R.C.L. 439, it is said:

"It is held in a number of the states that when a person whose land has been sold for taxes under an invalid tax sale comes into a court of equity and asks for a decree setting aside the sale and quieting his title to the land, and it appears that the property was subject to taxation and that the plaintiff would have been duty bound to pay the taxes levied thereon had it not been for irregularities in the tax proceedings, he should be required to reimburse the person who purchased the land at the tax sale for so much of the purchase price as was applicable to the payment of the tax, as a condition precedent to relief, on the general principle that he who seeks equity must do equity."

See also Pomeroy, Equity Jurisprudence, Vol. 2, Section 393a; Note 86 A.L.R. 1211, 50 Am. Jur. 728.

We are not here concerned with any situation in which the invalidity of the assessment of taxes, or sale of the land for taxes is involved. The assessment and sale are not attacked in any way as invalid. It is at most a defect in the subsequent proceedings leading up to a tax title which could be questioned. And as we stated, the lien is a superior lien. If the title were still in Sheridan County, and the plaintiffs were attacking these subsequent proceedings, there can scarcely be any doubt under the authorities that plaintiffs would be compelled to pay the taxes actually due, including thoese on account of which the tax deeds were issued. In Rice v. Rock, 26 Idaho 552, 144 P. 786, it is held that a perpetual tax lien is not wiped out by failure to give proper notice of the time of expiration to redeem, even thought the right to redeem continues. See also Andrews v. North Side Canal Company, 52 Idaho 117, 12 P. 2d 263, 268; Black, supra, Tax Titles, Sec. 329. Is the situation different because the county conveyed the land to the defendants? In view of the sweeping doctrine of subrogation, we think not. If the doctrine of subrogation did not apply in such a case, private purchasers would be afraid to buy from the county, and the collection of general taxes would be considerably hampered. It seems that under the civil law, a formal assignment of its rights would have been necessary to be made by the county, but, as is generally held, such assignment will be implied under our law. 50 Am Jur. 757. That rule has been most frequently applied in the case of sureties, and mortgagees, but no reason exists why it should not be applied in a case such as before us. And there are authorities to the effect that a purchaser from the holder of a tax title is entitled to the same rights as the original holder of such title. In other words, the rights of the original holder of a tax title are transmitted as part of the title to all subsequent purchasers of the land. And that ap-

pears to be expressly recognized in Chapter 76, Session Laws of 1933. Full equity would not be done, if that were not true. In the case of Holmes v. Soule, 180 Mich. 526, 147 N.W. 621, it appears that a tax deed to land was issued to one Edward Craw. Craw sold to Soule, and an action was brought against Soule to quiet the title against the tax deed on account of a defective notice of the expiration of the time of redemption. The court said in part:

"Complainant, in a court of equity, admits that the tax title purchaser served a notice upon the grantor December 8, 1902, and charges, what is admitted to be true, that the notice was defective * * * Complainant not having offered to now redeem the land, nor asking for permission to do so, no equitable relief can be granted to him."

In McKenzie v. Boynton, 12 N.D. 531, 125 N.W. 1059, it apears that a county's tax title was invalid by reason of the fact that no legal service of the notice of the expiration of the time for redemption had been made. Thereafter the county's title was conveyed to the H.B.L. Company, who paid additional taxes on the land. Thereafter, the H.B.L. Company conveyed the land to defendant. Plaintiff brought the action against the defendant to determine adverse claims against plaintiff's title. It may be noted that, except as to the parties, the case is almost like the case at bar. The court stated in part:

"We think—that in equity defendant should be deemed subrogated to the rights of the county as to its said tax liens, and that as to all subsequent taxes paid by him or his grantor he should be adjudged to have an equitable lien therefor upon the premises in question. Plaintiff is asking equitable relief, and as a condition to obtaining such relief he must be required to do equity."

The rule is stated succinctly in Holland v. Hotchkiss,

162 Cal. 366, 123 P. 258, 261, after citing Pomeroy on Equity, and a large number of cases, as follows:

"When the owner comes into equity asking equitable relief to remove or cancel a tax deed or sale as a cloud upon his title, or to obtain a judgment, which, in effect will invalidate such sale or deed, the court should refuse any relief except upon the condition that he first pay to the tax purchaser, *or his grantee or assignee*, the taxes, penalties, interest and costs justly chargeable upon the land and which the purchaser had paid at the sale, or afterwards upon the faith of it, with legal interest from the time of such payment, less rents received, if any, if the purchaser has been in possession."

See also McQuillan v. Ayer, 189 Mich. 466, 155 N. W. 599, where it is held that payment of taxes by the holder of a tax title inures to the benefit of subsequent purchasers of the land.

We do not think that it is necessary to cite any further authorities. Those cited clearly show that the defendants in this case are subrogated to the interests of the county, and would be entitled to receive back at least the amount which they paid to the county (which is somewhat less than the taxes actually due), and the taxes, with interest, subsequently paid. In view of the fact that plaintiffs have not manifested any disposition to pay these amounts, and apparently refuse to do so, we cannot see why, even if the tax deeds were based upon proceedings which were defective, we should disturb the judgment of the trial court entered herein. It is, accordingly, affirmed.

*Affirmed.*

RINER, J., concurs.