# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 47

**APRIL TERM, A.D. 2017**

**May 3, 2017**

MARK BROCK and DELLA BROCK,

Appellants
(Plaintiffs),

v.

STATE OF WYOMING, ex rel., WYOMING
WORKFORCE SERVICES, UNEMPLOYMENT
INSURANCE DIVISION,

Appellee
(Defendant).

S-16-0189

*W.R.A.P. 11 Certified Question*
*from the United States District Court for the District of Wyoming*
*The Honorable Scott W. Skavdahl, Judge*

*Representing Appellants:*
   *Jonathon I. Aimone, Lemich Law Center, Rock Springs, Wyoming.*

*Representing Appellee:*
   *Peter K. Michael, Attorney General; Daniel E. White, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Benjamin E. Fischer, Assistant Attorney General; Charlotte M. Powers, Assistant Attorney General. Argument by Ms. Powers.*

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]  The United States District Court for the District of Wyoming certified a question to this Court concerning the relative priority of liens against real property.  This question asks us to determine whether a lien created by a certificate of purchase for delinquent taxes held by Appellants, Mark and Della Brock, is superior to a lien held by the State of Wyoming, Department of Workforce Services, for unpaid contributions to the unemployment compensation fund.  We answer the certified question in the affirmative.

### CERTIFIED QUESTION

[¶2]  Is a lien against real property created by a certificate of purchase for delinquent taxes pursuant to Wyo. Stat. Ann. § 39-13-108(d)(ii) superior to any lien held by the State of Wyoming, Department of Workforce Services under Wyo. Stat. Ann. § 27-3-511(b) for unpaid contributions and interest to the unemployment compensation fund?

### FACTS

[¶3]  The federal district court's certification order contains a statement of facts pertinent to the certified question.  According to that order, this case concerns real estate in Uinta County and encumbrances against the property arising from the failure of Sagebrush Broadcasting Company, Inc. to satisfy various financial obligations.  Claims against the property have been asserted by the Brocks, the Department of Workforce Services, the United States Internal Revenue Service, and others.  The Brocks paid past due taxes on the property in 2010 and obtained a "Certificate of Purchase of Real Estate for Taxes" relating to the property.  They also paid taxes on the property through October 2014.  They claim they are entitled to approximately $22,000 in satisfaction of the taxes (including interest), costs, and attorneys' fees incurred in perfecting their title to the property.

[¶4]  The Department has also filed liens against the property for delinquent unemployment insurance contributions, interest, and fees.  The Department filed its first lien on August 23, 2006, and subsequently filed an additional 14 liens against the property.  As of May 2016, the delinquent contributions, plus interest, totaled $19,683.47.  The Internal Revenue Service filed its lien in 2009 for unpaid federal tax liabilities assessed against Sagebrush.  The IRS's lien is in the principal amount of $74,983.24.

[¶5]  This litigation began in January 2015, when the Brocks filed suit in state district court seeking foreclosure of their lien and a declaration that their lien is superior to all other encumbrances against the property.  The Brocks named the Department and the IRS

1

as defendants.[1]  The IRS removed the case to federal district court and has conceded that both the Brocks' and the Department's liens have priority over its federal tax liens.

[¶6]    The federal district court certified the issue to this Court to determine the relative priority of the interests held by the Department and the Brocks in the Sagebrush property. We agreed to answer the certified question.[2]

## *STANDARD OF REVIEW*

[¶7]    The certified question presents an issue of statutory interpretation.  We review questions of statutory interpretation *de novo*.  *Yager v. State*, 2015 WY 139, ¶ 7, 362 P.3d 777, 779 (Wyo. 2015).

## *DISCUSSION*

[¶8]    In answering the certified question, we apply our usual rules of statutory interpretation: "Our paramount consideration is the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute.  Initially, we determine whether the statute is clear or ambiguous."  *Spreeman v. State*, 2012 WY 88, ¶ 10, 278 P.3d 1159, 1162 (Wyo. 2012).

> A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability. Unless another meaning is clearly intended, words and phrases shall be taken in their ordinary and usual sense. Conversely, a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations. In determining whether a statute is ambiguous we begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari*

---

[1] Sagebrush, Radio Management Associates, Inc. and Millcreek Broadcasting, LLC were also named as defendants, but they defaulted.  Their interests are not at issue in this proceeding.

[2] The Brocks' reply brief in this matter included an appendix containing the United States' Response to Cross Motions for Summary Judgment, filed in the federal district court.  The Brocks contend the argument presented by the United States in that pleading supports its interpretation of the relevant statutes.  The Department moved to strike the appendix and we took the matter under advisement.  The position espoused in the United States' pleading is ultimately not an appropriate source of authority in our analysis of the certified question, and it has no bearing on our decision in this case.

*materia*. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.

*Jones v. State*, 2011 WY 115, ¶ 11, 256 P.3d 536, 541 (Wyo. 2011).

[¶9]    The Brocks claim their lien is superior to that held by the Department pursuant to Wyo. Stat. Ann. § 39-13-108(d)(ii) (LexisNexis 2015).  That statute provides:

> (d)  Liens. The following shall apply:
>
> (i)   Taxes upon real property are a perpetual lien thereon against all persons excluding the United States and the state of Wyoming. . . .
>
> (ii)  Any person, county, municipality or political subdivision holding a certificate of purchase or tax deed issued for delinquent taxes has a lien against the real property which is subject to the certificate of purchase or tax deed to the extent of taxes, costs and penalties accrued plus interest, accruing penalties and the value of improvements placed on the real property by the lienholder or his assigns while lawfully in possession of the premises. ***The lien is superior to all other liens except those created by junior tax sales or payment of subsequent taxes by another person.***

(Emphasis added.)  The Brocks claim the statute unambiguously makes their lien superior to the lien held by the Department because the Department's lien is not a lien "created by junior tax sales or payment of subsequent taxes by another person."

[¶10]  The Department claims a lien against the property under Wyo. Stat. Ann. § 27-3-511(b), which provides in pertinent part:  "The amount of contributions and interest due the department is a lien upon all real . . . property . . . owned or acquired by the employer."  That statute authorizes the filing of a lien for unpaid contributions but does not contain any provision pertaining to the priority of any lien filed under the statute. The Department relies upon Wyo. Stat. Ann. § 27-3-512 in support of its claim that its lien has priority.  The statute provides:

### § 27-3-512.  Priority over other claims under receivership.

> If an employer's assets are distributed by court order under

receivership, assignment, adjudicated insolvency or other proceeding, contributions under this act [§§ 27-3-101 through 27-3-704] ***shall have priority over all claims except taxes*** and claims for wages of not more than two hundred fifty dollars ($250.00) per claimant and earned within six (6) months before the proceeding. Priority of contributions in cases adjudicated under 11 U.S.C. § 101 et seq. shall be as provided by 11 U.S.C. § 507(a).

(Emphasis added.) Relying on the priority language in the statute, the Department asserts that the Brocks' lien is not a claim for "taxes" under Wyo. Stat. Ann. § 27-3-512. Consequently, the Department contends that Wyo. Stat. Ann. § 27-3-512 gives their lien priority, and that the statute is in "irreconcilable conflict" with Wyo. Stat. Ann. § 39-13-108(d)(ii).[3] The Department claims that "conflict" between the statutes creates an ambiguity which must be resolved by this Court. According to the Department:

> [T]he Brocks do not have a lien for taxes. Instead, the Brocks have, by virtue of their "certificate of purchase," a "lien against the real property . . . to the extent of taxes, costs, and penalties accrued plus . . . the value of improvements placed on the real property by the lienholder." Wyo. Stat. Ann. § 39-13-108(d)(iii). The Brocks' proposed construction fails and does not solve the ambiguity between the two statutes when they are construed together.

The Department claims that the ambiguity should be resolved in its favor, and that its lien should be found to have priority over the Brocks' lien. We do not agree.

[¶11] We rejected a similar argument in *Barlow v. Lonabaugh*, 61 Wyo. 118, 156 P.2d 289 (1945). In that case, the owners of property in Sheridan County failed to pay the

---

[3] Both the Department and the Brocks have proceeded under the assumption that the priority language in Wyo. Stat. Ann. § 27-3-512 applies in this case. As noted above, Wyo. Stat. Ann. § 27-3-512 is entitled "Priority over other claims under receivership." The first sentence of the statute indicates that it is applicable only "If an employer's assets are distributed by court order under receivership, assignment, adjudicated insolvency or other proceeding … ." There is nothing in the facts provided by the district court to indicate that this legal action falls within any of the situations identified in the statute other than possibly as an "other proceeding." Stated differently, there is no indication that the employer, Sagebrush, is in receivership or other similar proceeding. It is not immediately apparent that the instant case involves a situation where Sagebrush's "assets are distributed by court order." Fortunately, it is not necessary for us to resolve this question in order to answer the certified question. We will proceed with our analysis by assuming, but not deciding, that the priority language of Wyo. Stat. Ann. § 27-3-512 applies to this case.

4

assessed property taxes. The property was subsequently sold to the county. When the owners failed to redeem, the county treasurer issued a tax deed to the county for the property.[4] *Id.*, 61 Wyo. at 125, 156 P.2d at 291. The county subsequently sold the property to a private purchaser. The litigation was initiated by the holder of special assessment bonds issued for a paving assessment that were in default. *Id.*, 61 Wyo. at 124, 156 P.2d at 290. The bondholders claimed that their interest in the property was superior to the rights of the current owners because the tax lien had been extinguished when the current owner purchased the property from the county. The position espoused by the bondholders in *Barlow* was similar to the one taken by the Department here:

> defendants do not have nor assert a tax lien, and are not attempting to foreclose one. They merely have a quit claim deed from the county, and the county in turn acquired its title by deed from the owner and not through a completed tax sale. . . . In purchasing a quit claim of the property from the county, the county's claim or lien for general county and state taxes was discharged. From then on the defendants had the property as any private purchaser. When the county's prior lien for general taxes was paid and satisfied, the county no longer had a lien, and there was no question remaining as to priorities of liens as only one lien remained, namely the special assessment liens.

*Id.*, 61 Wyo. at 127, 156 P.2d at 291-92. We rejected that contention and, in doing so, noted our agreement with other jurisdictions that had considered the issue:

> The case of *White v. Thomas*, 91 Minn. 395, 98 N.W. 101, dealt with this situation. The court said:
>
> > "It is further claimed by respondent that the lien of the state for general taxes, after it has become the subject of private ownership, is subordinate to the liens of the city for local assessments. If this means, as we understand that it does, that the purchaser of the lien of the state takes it subject to all then existing liens of the city for local assessments, the claim is clearly wrong. Such a rule would practically emasculate the law

---

[4] Title to two parcels of property was at issue in *Barlow*. The owners of one parcel advised the county that they did not intend to redeem and quitclaimed the property to the county. The county treasurer executed a tax deed to the county for the other parcel after the time for redemption had expired. *Id.*, 61 Wyo. at 125-26, 156 P.2d at 291.

giving to the state a paramount lien, for the only way the state can realize on its lien is to sell, subject to redemption, the land upon which the lien rests, to private parties. Now, if the state could not on such a sale vest in the purchaser its priority of lien over then existing local assessments, it would be of little practical value to the state, for, in cases where the amount of the local assessment liens approximately equaled the value of the land on which they rested, no one would buy the state's claim. We hold, then, that a purchaser of the lien of the state takes it with its right of priority over all the then existing liens of the city for local assessments, without reference to the time when the state lien attached."

*Id.*, 61 Wyo. at 128, 156 P.2d at 292.

[¶12]  In *Barlow*, we recognized that our decision was dependent upon the absence of specific statutory language establishing the priority of special assessments: "We held in *Board of County Commissioners v. Bench Canal Drainage District*, 56 Wyo. 260, 108 P.2d 590 [(1940)], where the question was discussed at length, that a lien for general taxes is superior to the lien of a special assessment unless the statute specifically provides [to] the contrary." *Id.*, 61 Wyo. at 126, 156 P.2d at 291.  Indeed, in *Bench Canal*, 56 Wyo. at 272-73, 108 P.2d at 593-94, we stated:

> [I]t is a general rule, supported, it seems, by the great weight of authority, that a lien for general taxes is superior to the lien of a special assessment, such as, or similar to that involved in the case at bar, unless the statute specifically provides [to] the contrary. . . .
>
> . . . .
>
> We must test the statute in question in the light of the foregoing rule, which seems to have a sound basis, and no good reason has been pointed out why we should not adhere to it. It will be noted at once, that if the legislature intended to place a lien for drainage assessments and the lien for general taxes on an equal footing, it did not use very happy language. It would have been easy to have stated that they should be of equal dignity. In *Waltom v. City of Portales*, 42 N.M. 433, 81 P.2d 58, it appears that the statute of New Mexico provides that a special improvement lien "shall be on a parity with the

6

tax lien of general taxes, and no sale of such property to enforce any general tax or other lien shall extinguish the perpetual lien of such assessment." Here we find clear and explicit language, and the court held, of course, that the liens were on a parity. Counsel for the drainage district want us to construe the statute involved in the case at bar, as the New Mexico court construed its statute, though the difference is that between day and night.

Since the decisions in *Barlow* and *Bench Canal*, our statutes have been amended and now provide that "The holder of the certificate of purchase takes subject to any special assessments for local or public improvements." 1981 Wyo. Sess. Laws ch. 160, § 1 (now codified at Wyo. Stat. Ann. § 39-13-108(e)(iii)(E)).

[¶13] In this case, the Brocks are the holders of a certificate of purchase on the property. They obtained that certificate of purchase by purchasing the property for the delinquent taxes assessed against the property. No statute similar to Wyo. Stat. Ann. § 39-13-108(e)(iii)(E) is applicable here that would provide priority to the lien asserted by the Department. The statute upon which the Department relies specifically subordinates its lien to a "claim" for "taxes." The Brocks' lien is predicated upon the certificate of purchase that it obtained pursuant to the statutory procedure established for the collection of taxes. That procedure allows the county treasurer to "[C]ollect delinquent taxes by sale of real property." Wyo. Stat. Ann. § 39-13-108(e)(ii)(A). A purchaser who pays the applicable taxes, interest, and fees receives a certificate of purchase. Wyo. Stat. Ann. § 39-13-108(e)(iii)(C). After passage of the required time, "Holders of certificates of purchase of real property sold for delinquent taxes" may apply for a tax deed. Wyo. Stat. Ann. § 39-13-108(e)(v)(B). The Brocks' lien is a "claim" for "taxes."[5] There is no ambiguity between Wyo. Stat. Ann. § 39-13-108(d)(ii) and Wyo. Stat. Ann. § 27-3-512 in need of reconciliation. The plain language of both statutes indicates that a lien for taxes is superior to a claim for contributions to the unemployment compensation fund.[6]

[¶14] The Department also asserts that our decision in *Alamo Drainage Dist. v. Board of*

---

[5] Further support for this conclusion is found in *Alamo Drainage Dist. v. Board of County Comm'rs*, 60 Wyo. 177, 182, 148 P.2d 229, 230 (1944), where we described the county's certificate of purchase for taxes as a "general tax lien."

[6] We would reach the same result following a determination that Wyo. Stat. Ann. § 27-3-512 does not apply to the current proceedings. The legislature clearly indicated its intent to establish the priority of liens for unpaid unemployment compensation contributions in some circumstances. If the legislature intended that those liens were to have priority in the situation presented here, it could have easily done so in a manner similar to Wyo. Stat. Ann. § 39-13-108(e)(iii)(E). The fact that it has not indicates that the holder of a certificate of purchase for taxes has priority over such claims.

*County Comm'rs*, 60 Wyo. 177, 148 P.2d 229 (1944) indicates that its lien has priority over the Brocks' certificate of purchase. That case, however, is distinguishable. In *Alamo*, the Alamo Drainage District issued bonds to finance installation of a drainage system in Big Horn County. The state purchased the bonds in 1924 with money from "the permanent school funds of the State." *Id.*, 60 Wyo. at 185, 148 P.2d at 231. In 1934, after the District failed to pay taxes assessed on the land, the county treasurer of Big Horn County sold the land at a tax sale and issued the certificate of purchase to Big Horn County, the purchaser at the sale. *Id.*, 60 Wyo. at 184, 148 P.2d at 231. The Board of County Commissioners of Big Horn County subsequently brought suit against the District in an attempt to foreclose its tax lien. *Id.*, 60 Wyo. at 182, 148 P.2d at 230. The district court found that the county's lien for general taxes was superior to the state's bonds. *Id.*

[¶15] On appeal, this Court held that the bonds had priority over the county's certificate of purchase for taxes. In analyzing the relative priority of the liens, the Court turned to two statutes: Section 115-2303, Rev. St. 1931 and the "Legislative Act of 1935," 1935 Wyo. Sess. Laws ch. 84, § 1. The 1931 law provided, similar to Wyo. Stat. Ann. § 39-13-108(d)(i), that "taxes upon real estate are hereby made a perpetual lien thereon against all persons or corporations except the United States and this state." The Legislative Act of 1935, in turn, provided, in terms substantially similar to current Wyo. Stat. Ann. § 39-13-108(d)(ii), that the holder of a certificate of purchase for taxes has a lien which "shall be superior to any other lien, except that of junior tax sales or subsequent taxes[.]" The Court determined that, because the 1935 Act did not include the state directly or by necessary implication, the Act did not give the county's certificate of purchase priority over the bonds held by the state. *Id.*, 60 Wyo. at 188-91, 148 P.2d at 232-34. The Court then conducted an extensive review of the constitutional provisions indicating the importance of the state school fund before reiterating its conclusion that the 1935 Act did not apply to the drainage bonds held by the state because the state was not mentioned expressly or by implication in the 1935 Act:

> We shall not, in our conclusions herein, go further than necessary. The contention made herein by the Drainage District is that the lien of the State under its bonds is superior to the lien of the general taxes. With that contention we agree. We do so upon the theory that the State is not mentioned in the Legislative Act of 1935, as amended, nor does that Act contain any provision which, under the rule of law heretofore stated, includes the state by necessary implication. The paramount lien of the state above mentioned is, accordingly, unaffected by the statute of 1935 as amended and that superiority must be given effect in a foreclosure proceeding.

8

*Id.*, 60 Wyo. at 200, 148 P.2d at 238.  The Court, however, stopped short of deciding that the 1935 Act, was wholly inapplicable to the state:

> It is not necessary herein to hold that the Legislative Act of 1935 as amended is wholly ineffectual so far as the state is concerned. No such contention is made herein. The policy of the State is, and should be, to place the land which for so many years has paid neither the general taxes nor the drainage taxes, again upon the tax roll. *Ledegar v. Bockoven*, 77 Okla. 58, 185 P. 1097, 1100. *See Brewer v. Feigenbaum*, 47 Cal. App. 2d 171, 117 P.2d 737; *South San Joaquin Irr. Dist. v. Hornbeck*, 2 Cal. 2d 485, 490, 42 P.2d 64, 66. In fact it has been held that the economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts. *Keefe v. Drain Com'r.*, 306 Mich. 503, 11 N.W.2d 220, and cases cited; 16 C.J.S. 702, note. Whether the Legislative Act of 1935, as amended, should, under the proper facts, not in the record before us now, be held to be wholly inapplicable to the State need not now be decided, though it might be well for all interested parties to re-examine the statute in the light of all the various facts which might arise, and take such steps as may be deemed proper or necessary, if any. We need go no further in this case than to hold that under the fact[s], or lack of facts, as disclosed in the record, and under the constitutional and statutory provisions applicable, the State's lien heretofore mentioned is paramount to the lien of plaintiff, and the judgment of the trial court should be modified accordingly. It is so ordered.

*Id.*, 60 Wyo. at 200-01, 148 P.2d at 238.

[¶16] *Alamo* is distinguishable from the present case.  In this case, there is no concern for appropriation of the permanent school fund and, further, no potential conflict between the relevant statutes and the Wyoming Constitution.  Additionally, when considering liens of the state for delinquent unemployment compensation contributions, there is a specific statute, Wyo. Stat. Ann. § 27-3-512, addressing the priority of a state lien arising from the failure to make required contributions to the unemployment compensation fund. No similar statute or expression of legislative intent was at issue in *Alamo*.  Further, in light of the subsequent addition of Wyo. Stat. Ann. § 39-13-108(e)(iii)(E), there appears to be little doubt that the holder of a certificate of purchase would take subject to the claim for assessments similar to those at issue in *Alamo*.  Again, however, there is no similar expression of legislative intent with respect to the Department's assessments for

contributions to the unemployment compensation fund. Accordingly, the decision in *Alamo* is not controlling in the present case.

## *CONCLUSION*

[¶17] For the foregoing reasons, we answer the certified question in the affirmative: A lien against real property created by a certificate of purchase for delinquent taxes pursuant to Wyo. Stat. Ann. § 39-13-108(d)(ii) is superior to any lien held by the Department of Workforce Services under Wyo. Stat. Ann. § 27-3-511(b) for unpaid contributions and interest to the unemployment compensation fund.